## Case No. 14,930

### UNITED STATES v. DAVIS.

[5 Mason, 356.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1829.

FEDERAL CRIMINAL JURISDICTION—GRANT TO UNITED STATES—LARCENY—CHOSES IN ACTION—"PERSONAL GOODS."

1. The offence of larceny is not punishable under the act of 1790, c. 9 [1 Stat. 112; 1 Story's Laws, p. 80, c. 36], unless committed in a place under the sole and exclusive jurisdiction of the United States; and to bring the case within the statute there must be an averment of such sole and exclusive jurisdiction in the indictment.

[Cited in U. S. v. Andrews, Case No. 14,455; U. S. v. Tierney, Id. 16,517.]

2. "Personal goods," in that statute, do not include choses in action, the latter not being the subject of larceny at the common law.

[Cited in U. S. v. Moulton, Case No. 15,827; U. S. v. Stone, 8 Fed. 251.]

3. Where a larceny is committed in a place not under the sole and exclusive jurisdiction of the United States, it may yet be punishable under the third section of the act of 1825, c. 276 [3 Story's Laws, 2000; 4 Stat. 115, c. 65.]

[Cited in U. S. v. Barney, Case No. 14,524.]

4. Offences are punishable under that section according to the state laws, where they are committed, under circumstances, or in places, in which, before that act, no court of the United States had authority to punish them.

[Cited in Re O'Connor, 37 Wis. 384.]

5. It seems that a reservation on a cession of "concurrent jurisdiction," to serve state process, civil and criminal, in the ceded place, does not exclude the exclusive legislation or exclusive jurisdiction of the United States over the ceded place. It merely operates as a condition of the grant.

[Cited in Lasher v. State, 30 Tex. App. 387, 17 S. W. 1065; Sinks v. Reese, 19 Ohio St. 318.]

Indictment against the defendant [Edmund Davis] for larceny. The indictment charged, that the defendant, on the 15th of May, 1829, in the Marine Hospital at Chelsea, in the district of Massachusetts, a needful building belonging to the United States, the site whereof has been and is ceded by the state of Massachusetts to the United States, with force and arms, one trunk of the value, &c., one bank bill of the North Bank, of the value, &c., one bank bill of the Bank of the United States, of the value, &c. (describing also sundry other articles, and gold and silver coins,) and one promissory note, being then unsatisfied &c. of the goods, chattels, monies, and property of Charles Turner, steward and overseer of the said Marine Hospital, then and there in the said Marine Hospital, being found, did then

[1] [Reported by William P. Mason, Esq.]

and there feloniously steal, take, and carry away, against the peace and dignity of the said United States, and contrary to the form of the statute of the United States in such case made and provided. Plea, not guilty.

Upon the trial the jury disagreed as to the facts, and were, by consent of the parties discharged from giving any verdict. And thereupon F. Dexter, for the defendant, moved the court to quash the indictment upon an objection, which he had taken at the trial. It was as follows: The present indictment is founded on the act of 1825 (chapter 276, § 3). That section applies only to offences, which have not been previously provided for by the crimes act of 1790, c. 9 [1 Story's Laws, p. 83, c. 36] § 16. The offence described in that section is larceny; and so is that in the present indictment. The offence too is committed in a place within the exclusive jurisdiction of the United States. And if not so, still as the specific offence is provided for, although not when committed in such a place as the Marine Hospital under the cession, it is out of the purview of the act of 1825. The words of that act (section 3) are "that if any offence shall be committed in any of the places aforesaid, the punishment of which offence is not specially provided for by any law of the United States, such offence shall receive the punishment provided by the laws of the state in which the ceded territory is situate. The terms of the statute do not apply to the place, but to the description of the offence. If not punishable when committed in the particular place, still, if the offence is provided for, and punishable when committed in any other place, the statute does not authorize the court to entertain jurisdiction.

Mr. Dunlap, U. S. Dist. Atty., for the United States.

The motion to quash the indictment rests upon two grounds; first, that the indictment is not supported by the statute of 1825 (chapter 276, § 4); secondly, that it is not supported by the statute of 1790 (chapter 36, § 16). It is said, that it is not within the statute of 1825, because the offence is "specially provided for" by the statute of 1790; and not within the statute of 1790, because the indictment does not aver, that the place where the larceny was committed was within the "sole and exclusive" jurisdiction of the United States. The answers offered to these objections to the indictment are these. The offence, charged in the indictment,—stealing a trunk, containing money, bank bills, and a promissory note,—was not provided for by the statute of 1790, for the Marine Hospital at Chelsea was not a place within the "sole and exclusive jurisdiction" of the United States, within the words and meaning of that statute. It was a place where congress must necessarily, by the constitution of the United States (article 1, § 8), exercise "exclusive legislation;" but the act of cession, by the state of Massachusetts, expressly pro-

vides, that the state of Massachusetts shall retain "concurrent jurisdiction," so far as that all criminal and civil processes of the state may be executed within the ceded tract of land, and persons residing there are to be considered inhabitants of the town of Chelsea.

If the cession of the tract to the United States necessarily vested the "sole and exclusive jurisdiction" in the United States, upon the ground, that "jurisdiction" must be "sole and exclusive," then alleging the place, as is alleged in the indictment, to be "under the jurisdiction of the United States," is alleging it to be under the "sole and exclusive jurisdiction;" and, consequently, the indictment, if not supported by the statute of 1825, is, clearly, by that of 1790. It was the opinion of the supreme judicial court of Massachusetts, delivered by Chief Justice Parsons, in relation to offences in the Springfield Armory, in Clary's Case, 8 Mass. 72, that the cession by the state of Massachusetts vested in the United States the sole and exclusive jurisdiction in relation to offences there committed. The word "jurisdiction," in the first section of the statute of 1825, being in relation to the forts, dockyards, arsenals, and magazines, in the statute of 1790, is evidently there used in the sense of "sole and exclusive jurisdiction."

On the other hand, if the mere possession of "jurisdiction" is not the possession of "sole and exclusive jurisdiction," then the Marine Hospital at Chelsea is not under the "sole and exclusive jurisdiction" of the United States, because of the "concurrent jurisdiction" of Massachusetts, reserved in the cession; and, therefore, it is not a place described in the statute of 1790, and the case falls within the statute of 1825.

The sixteenth section of the statute of 1790 contains the word, "places," but it evidently refers to the third section of that law, in which is contained the following enumeration; "fort, arsenal, dock-yard, magazine, or in any other place or district of country under the sole and exclusive jurisdiction of the United States." It is contended, that the word "place," is here used as synonymous with "district of country," and was never intended to apply to a "needful building," like the hospital, as such buildings were not then possessed. This, probably was one of the reasons which induced congress to make the very provision in the statute of 1825.

The statute of 1790 did not provide for this case, for it prohibited, if it prohibited a technical larceny, (which, from the language used, is doubtful,) the stealing of "personal goods" merely. Mr. Dane, in his Abridgment of American Law (volume 7, p. 176), observes, upon this law, that the act does not say, "feloniously stole." In the present case, the only "personal goods" stolen were the trunk. Its contents were monies, bank bills, and a promissory note. Perhaps the monies may be included under the term, "personal goods," but the bank bills and the promissory note, being choses in action, cannot; and, as the larceny was committed at one time and place, it could not be split into two offences. Consequently, the case was not provided for in the statute of 1790, and fell within that of 1825. Goods and chattels are synonymous words. The law dictionaries refer, for a definition of goods, to the word "chattels." Jac. Law Dict. "Goods."

In Com. Dig. tit. "Biens," is an enumeration of what are included in the term, "goods"; neither money nor choses in action are enumerated. Lord Coke, also, makes a similar enumeration; but although he mentions such things as "bows," does not enumerate money nor choses in action. Co. Litt. 118. Jacob's Law Dictionary, word "chattels," contains a similar definition. Money and choses in action, so far from being mentioned as chattels, are expressly stated not to be so. Had choses in action been "personal goods," there would have been no necessity for the various statutes passed to render property of this nature the subject of larceny; for there never was a time in the history of the common law when a felonious taking and carrying away the "personal goods" of another, with intent to steal, was not larceny. These statutes were passed expressly upon the ground, that choses in action were not "personal goods." The words, "personal goods," in the 16th section of the statute of 1790, are evidently used in a common law sense, instead of the word, "chattels," and being in a penal statute, are to receive a strict construction. Because money and choses in action are "assets," it does not follow that they, particularly choses in action, are "personal goods;" for mortgages, leases for years, stocks, &c. are assets in the hands of executors and administrators, though certainly not goods and chattels.

STORY, Circuit Justice. We have considered the motion, and are of opinion, that the objection taken at the bar cannot be maintained in point of law, and the motion ought therefore to be overruled. The crimes act of 1790, c. 9 [1 Story's Laws, p. 83, c. 36] § 16, provides, "that if any person within any of the places under the sole and exclusive jurisdiction of the United States, or upon the high seas, shall take and carry away, with intent to steal or purloin, the personal goods of another," &c. he shall, on conviction, be liable to a certain punishment prescribed by the act. It is clear, that no person is punishable under this act, unless his case falls within the descriptive terms used in the act. If he should take and carry away, with intent to steal or purloin, any thing, not the "personal goods" of another, or should commit the offence in a place not "under the sole and exclusive jurisdiction of the United States," he would not be liable to punishment under the act. And an indictment, which did not contain all the material statements to bring the case within the statute, would be bad, and judgment might, even after verdict, be arrested for the defect. And an indictment, to be properly framed, must follow, if not the

very words, at least the substance of the statute. Now, it is clear, that the present indictment could not be supported for a moment on the act of 1790, for it does not state, that the place is "under the sole and exclusive jurisdiction of the United States," nor does it use the words of the statute, "take and carry away with intent to steal or purloin;" both which defects would be fatal. For in criminal cases, courts of law are not at liberty to make intendments and inferences to support indictments, in the same manner as they may do to support civil actions. How, then, can the court say, upon this motion, that the offence described in this indictment is the same offence provided for in the act of 1790? If the words of the act of 1790 describe the offence of larceny or theft at the common law, still the indictment must use the words of the statute, for it is punishable as a statute offence; and it would not be sufficient to allege. that the party was guilty of larceny or theft. And for the same reason it would not be sufficient to use any other words, not being those of the statute, although in the sense of the common law they may be descriptive of the same offence. Whether the words, "take and carry away with intent to steal," are exactly in all cases of the same legal import with "feloniously steal, take, and carry away," it is unnecessary to consider.

Farther; an indictment on the act of 1790 lies only, where the offence is committed in respect to the "personal goods" of another. To ascertain what is the meaning of these words we must resort to the common law, for that furnishes the proper rule of interpretation. Now, in the strict sense of the common law, personal goods are goods, which are moveable, belonging to, or the property of, some person, and which have an intrinsic value. Bonds, bills, and notes, which are choses in action, are not esteemed, by the common law, goods, whereof larceny may be committed, being of no intrinsic value, and not importing any property in possession of the person, from whom they are stolen, but only evidence of property. See 2 Bl. Comm. 383, 387, 394, 396, 397; 4 Bl. Comm. 232, 233, 234; 2 East, P. C. 587; 2 Russ. Crimes, 1095; 1 Hawk. P. C. bk. 1, c. 33, §§ 34. 35. It is true, that the words "goods" or "chattels," may, in the construction of wills, include bonds, notes, bank-bills, &c.; but this is upon the presumed intention of the testator. where a liberal exposition of his words is allowable, and upon principles derived from the civil and canon law. 2 Rop. Leg. c. 16. But in penal statutes a more strict construction is adopted; and the analogy of the common law in respect to larceny may well furnish the proper rule for decision. We think, then, that "personal goods," in the sense of the act of 1790, do not embrace choses in action. And the present indictment is, in part, founded on a larceny of choses in action.

But the decisive objection against the mo-

tion is, that to bring the case within the act of 1790 the offence must be committed in a place within "the sole and exclusive jurisdiction of the United States." The allegation, in the present indictment, is, that the site of the Marine Hospital "has been and is ceded by the state of Massachusetts to the United States;" which allegation is quite consistent with its not being a sole or exclusive jurisdiction. At least the court cannot intend otherwise upon a motion of this nature. It cannot judicially say, that a cession of jurisdiction is, ipso facto, equivalent to, and necessarily a sole and exclusive jurisdiction. If we are at liberty to look into the statute of Massachusetts (March 4, 1826, St. 1825–28, c. 181), ceding jurisdiction of a place for a Marine Hospital in Chelsea, which, as a public statute, we may take notice of, (though we cannot judicially know, that the place described in the indictment was purchased under the authority of that statute,) we shall find, from the terms of that statute, that there was not an unconditional consent to the cession. The words are, "that the consent of this commonwealth be and hereby is granted to the United States to purchase a tract of land, not exceeding ten acres, which shall be found necessary for the Marine Hospital to be built at Chelsea in the county of Suffolk, and may hold the same during the continuance of the use and appropriation aforesaid. Provided, that this commonwealth shall retain, and does hereby retain concurrent jurisdiction with the United States in and over said land so far, that all civil and criminal process, issued under the authority of this commonwealth or any officer thereof, may be executed on any part of said land, or in any building, which may be erected thereon, in the same way and manner, as though this consent had not been granted as aforesaid." And then follows another proviso, "that persons removing upon the tract of land shall be deemed to be inhabitants of Chelsea, and enjoy rights and privileges, and perform duties as such, except serving on juries, or doing military duty." The constitution of the United States has authorized congress "to exercise exclusive legislation over all places purchased by consent of the legislature of the state, in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." And there is nothing in this act of cession which excludes the exercise of exclusive legislation in this tract of land by congress, for no power to punish offences committed there is retained by the state. If, therefore, by the terms "sole and exclusive jurisdiction," in the act of 1790, no more is meant, than "exclusive legislation," an indictment founded on that act, so far as this objection goes might be maintained. In the case of Com. v. Clary, 8 Mass. 72, the supreme court of Massachusetts considered the mere reservation, in a cession, of a right to execute such civil and criminal process, as

not inconsistent with an exclusive jurisdiction in the United States. And that decision was adopted and followed by the circuit court in U. S. v. Cornell [Case No. 14,867]. In the cession referred to in U. S. v. Cornell, the words, "concurrent jurisdiction" are not to be found in the proviso. But in the cession by the statute of Massachusetts (statute 25th of June, 1798,) referred to in Com. v. Clary, 8 Mass. 72, the words, "concurrent jurisdiction" are found in the same connexion. And indeed the clause of the present cession appears to be borrowed, in substance, from that of the statute of 1798. So that the authority is directly in point. The act of congress of March 2, 1795, c. 105 [1 Story's Laws, 391; 1 Stat. 426, c. 40], seems incidentally to justify the same construction; for it declares cessions for light-houses, &c. made with such reservations, shall be deemed sufficient; and further provides, that where such reservations have not been made,. the state process may nevertheless be executed there. But it is not necessary absolutely to decide this point in the present case, since the present indictment does not allege, that the offence was committed in a place under the sole and exclusive jurisdiction of the United States; so that it does not judicially appear to be an offence punishable under that act. If there was a concurrent jurisdiction, the offence is clearly not punishable by the act of 1790; if there was an exclusive jurisdiction, that is not shown on the face of the indictment. Either way, therefore, we cannot say, that the offence is provided for in the place, where it was committed, so as to be punishable by this court, if the party had pleaded guilty under the act of 1790.

But it is said, that it is not necessary, that the offence should be so punishable, to except it out of the operation of the third section of the crimes act of 1825; all that is required is. that the offence should have been provided for by some prior act, as a substantive offence in some place, as in a fort or on the high seas, &c. although not in a hospital. We cannot yield to this argument. The object of the act of 1825 was to provide for the punishment of offences committed in places under the jurisdiction of the United States, where the offence was not before punishable by the courts of the United States under the actual circumstances of its commission. The language of the act is, "that if any offence shall be committed in any of the places aforesaid, (that is, forts, dock-yards, &c. or the site of any other needful buildings,) the punishment of which offence is not specially provided for by any law of the United States, such offence shall, upon a conviction in any court of the United States, &c., be liable to, and receive, the same punishment, as the laws of the state, in which such fort, &c. is situate, provide for the like offence, &c." Now, it is plain, that no law of the United States punished this offence, if the place was not within its sole and exclusive jurisdiction.

It was, therefore, within the very words of the section, an offence, "the punishment of which was not specially provided for by any law of the United States." The purposes of the section would be wholly defeated by any other construction of the words; and we can really perceive no solid objection to that, which we have given to it. It appears to us to be a rational and obvious construction of it.

The motion to quash the indictment is therefore overruled.