Hemphill, Ch. J.
The entryof juclgmentsprofornza has been heretofore the subject of animadversion, and the objection is still stronger wheti the judgment is expressed to be thus given, that the matter may be revised and adjudicated by the Supreme Court. An appeal from a judgment is the right of a party. It is not in the power of a court to reserve a matter, without judg- ment thereon, for revision by the appellate tribunal, nor to send it up of its own motion, even after judgment, for review and adjudication. Bitt as an tppeal was formally taken in this case, this entry in the j uiclgment may be treated as ~urp1nsage, aiid as not aftbcting the right of the cause to be iii this court or our jurisdiction over the same. There are
some facts affecting tile rights of the parties in this cause which are omitted, or which are left to inference, when they should have been dis- tinctly stated. For istance, it may be inferred that tile territory within which the laud lies was once embraced in the empresario contract of Austin and Williams; otherwise, how could Teal be recognized as one of tile colonists of that enterprise? His recognition as one of the cQlonists raises the presumption that the land on which he settled was within the limits of the colony. But this is not specifically specially agreedupon. The fact that this section of the coniltry was compie]iended within the limits of their contract from February, 1831, until tile rights of Robertson were established by the decree of tIm 20th April, 1834, is public and notorious. It is a matter belonging to tile public history. of the times. It exists, or should exist, for perpetuation, among the public archives. It was involved in the litigation prosecuted against tile Gov- erument by the enipresarios of what is generally known as Robertson's coloiiy and of the colony of Austin and Williams, and it, as a fact, is as much entitled to jncliciai recognition aiid to become tile basis of judicial action as any other matter on the records of history. The fact
that rI~ea1 was settled within the limits of the colony of Aust in and Williams is clear, and that lie settled on the laud in good faith and without objection on the part of the empresarios Austin and Williams; who alone had the r~ght to object, most be presumed until the contrary is shown. And that Bobertson had no claim as empresano or otherwise over this land until more than two, perhaps three, years after the settlement by the defqnclaiit is epiahly beyond question. r1~hat Teal had no survey or order of survey, amparo or title of possession, was not his fault. The certificate of the agent of the euiprcsa- rios shows, inferentially, mid the fact is historically true, that no comnih~ioiicr had, up to the chauge of empresarios, beau appointed for the extension of tit lea in the colony of Austin and Williams; aiid eonseqnently n~ steps could be taken for the severance of the land from the public domain and tile appropria- tion of it by legal formalities to himself.
Tile que~tio]iupon this state o~ facts is, whether the defendant had such an *175 equity in liis possession as should have been respected by the empresario Bob-ertson in proceeding to fulfill liis contract of colonization, and especially whether the attempt of the latter to appropriate the land to his own use was not so subversive of the first principles of justice, and in such diametric opposition to the rule of conduct prescribed to him in the premises by liis official situation as to divest him of any right in the land or any power to set up his title against the superior equities of the defendant. Had any one of the colonists of Bobertson claimed and secured a grant, of this land the right of the defendant and his equities would have been doubtful, at least the decision against. Teal might not have been subject to revision or open to examination. The empresario in such a controversy would be presumed to have been impartial, and to have used no unauthorized means to secure the land to either party. It is true that the empresario did not have the power to issue titles; that belonged to the commissioner. r>ut he was consulted prior to the issue of a grant, and as a general rule was requested to report whether the applicant was a colonist, and, if a particular tract had been designated, to report also whether the land was vacant. In Austin’s colonies there were cases in which the empresnrio’s report that lands onee granted had been forfeited was deemed sufficient to authorize a regrant of the said lands. By virtue of his official situation he had a vast influence in the distribution of lands within the limits of his colony, and the exercise of his power, especially when in favor of himself, must, to be lawful and operative, be not obnoxious to the charge of having violated the legal rights or the strong equities of others.
But the right of the defendant to this land will be still more clear and conclusive, when we consider that it was a general if not a universal stipulation of colonization contracts that the rights of individuals to lands previously acquired should be respected; and, without any violation of law, we may presujne that such was one of the stipulations of Bobertson’s contract. This duty was simply a declaration of obligation of empresarios as resulting from the principles of law. It was generally expressly enjoined ou empresarios, and it is not probable that in Bobertson.’s case there was an exception. If such had been the stipulation, as it was the law, would not the empresario have been compelled to respect the equitable claims of the colonists introduced by the empresarios Austin and Williams, whoso want of surveys and titles was exclusively owing to the failure -of the Government to appoint a commissioner? The fact that they had neither surveys nor titles was well known to the executive, and a stipulation in their favor was susceptible of no other construction than that their possessions, acquired in good faith as colonists, should be respected by the succeeding empresario. A stipulation in favor of legally-acquired rights would, under such circumstances, be extended to equities derived from settlement, though under other circumstances, where there had been a commissioner, it might be"restricted to titles, inceptive or complete, issued by the lawful authority for that purpose. In this view, the rights of Teal should have been maintained against those of subsequent colonists introduced by Bobertson, and more especially should it have been preferred to a claim for Bobertson’s own benefit and advantage.
But it appears that Hiram Briley was at one time settled on this land, and that his right to its location was sold to Bobertson. The mere fact of settlement cannot of itself, under the law as it then existed, give any light. Under special circumstances and relatively to the rights of others (as we have seen in the case of the defendant) it may raise an equity.' But the facts in this case are against the claim under the settlement by Bliley. It is not shown, nor can we presume from anything in the record, that he was introduced in the country or in the colony by the lawful authorities. And further, bis settlement had been discontinued for more than a year before the occupation by the defendant, and if be ever had any right, it was lost by his selection elsewhere, and whether his right were good or not, it was not susceptible of transfer so as by the transfer itself to impart any right to another.
The appellees have rested their rights principally on the ground that an emc *176 presario had no right to a grant of land as a colonist within the limits of his own colony. We cío not deem it necessary to decide on this point. The right is not free from doubt; but one tiling is certain, that if such a grant be supported at all, it must not be justly chargeable with the sacrifice of the legal or equitable rights of third parties. It must have been obtained partly through the official instrumentality of the empresario himself, and must not be vitiated by the infliction of wrong. Under all the facts of this case wé are of opinion that the defendant Teal had, at tlio time of the grant to Robertson, a superior equity or right to the land; that his claim was such as was entitled to respect by Robertson and the officers employed in carrying this empresario contract into execution; and especially is his claim to be preferred to that of the plaintiff as a colonist in his own empresario contract, and to a title issued to him as such colonist, he being the empresario, in the active exercise of liis powers as such.
The claim of the defendant has never been abandoned. He has pursued it and attempted in despite of all opposition to secure a title in form. His original equities have been maintained in tlieir freshness and vigor, and they are as much entitled now to regard as they were in the commencement of the struggle between these parties. We are of opinion that there is no error in the judgment; but as it was informally entered below, it is ordered, adjudged, and decreed that the same be reversed, and such judgment he rendered as should have been entered below.
Reversed and reformed.