JOHN LASHER v. THE STATE.

*No. 3859.   Decided November 25.*

1.   **Evidence—Forts, etc., Ceded to United States—Record Books as Evidence.**—Where the statutes of the State provide that certified copies or certificates of archives of the State Department shall be received in evidence in lieu of originals, *held*, that it is incompetent and inadmissible to establish a cession of lands for a United States fort by the introduction of the record book of a county, in which such cession was also recorded.

2.   **Same.**—The law makes no provision for the original books of record of another court being read in evidence, but provides for certified copies.

3.   **Jurisdiction of State Courts as to United States Military Forts and Posts.**—Where lands have been legally ceded to United States under the laws of a State for a military post, and a reservation is contained in the cession of "concurrent jurisdiction" to serve State civil and criminal process in the territory ceded, *held*, that such reservation merely operates as a condition of the grant, and does not defeat the exclusive jurisdiction of the United States over the ceded place (Const. U. S., art. 1, sec. 8, subdiv. 18), and that the State courts have no jurisdiction of crimes committed therein.

4.   **Same—Judicial Notice.**—The fact of cession and segregation of a portion of a territory of a State to exclusive foreign jurisdiction and control, is the exercise of one of the highest acts of sovereignty, and one that affects the people of the State at large; and courts of this State will take judicial knowledge of the fact of cession, and that crimes committed within the ceded territory are beyond the jurisdiction of the State courts.

APPEAL from the District Court of Webb.   Tried below before Hon. A. L. McLaine.

Appellant was indicted for and convicted of forgery, the punishment denounced against him by the verdict and judgment being two years in the penitentiary.   The evidence shows that defendant was a soldier in the United States Army, on duty in Fort McIntosh, which fort was situated in Webb County, Texas, but the lands upon which said fort was situated had been previously ceded under the laws of Texas to the United States government for the purposes of a military post or fort.   The evidence adduced at the trial further tended to show that the offense was committed inside the limits of said fort.   The opinion of the court states all the facts essential to be understood with reference to the questions decided.

*Bethel Coopwood*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE.—Appellant was convicted of forgery. It is shown by the record that at the time of the alleged commission of the offense appellant was a soldier in the United States Army, and the offense, if committed by him, was committed in Fort McIntosh, a

military post occupied by the United States troops in the county of Webb, State of Texas.

On the trial defendant offered evidence to establish the fact that the land upon which Fort McIntosh was situated had been legally ceded by the State of Texas to the United States government under the provisions of title 15, chapter 1, and especially articles 333 and 334, of our Revised Statutes, which authorize the governor of the State, whenever the United States shall acquire any land in this State, in the name and behalf of the State to cede to the United States exclusive jurisdiction over lands so acquired, the State retaining concurrent jurisdiction only so far as that all process, civil or criminal, issued under the authority of the State or of any of the courts or judicial officers thereof, may be executed by the proper officers of the State on any person amenable to the same within the limits of the land so ceded, in like manner and with like effect as if no cession had taken place.

In order to establish the cession of the lands to the United States government by the governor of the State of Texas, the defendant offered in evidence the original record book of Webb County containing the recorded deed. This evidence was objected to because it was incompetent, and the objection was sustained by the court, and the record book as evidence was excluded. In this the court did not err.

The record books of the county clerk's office of recorded deeds, etc., can not be introduced in evidence to prove title, at least not without notice to the adverse party. "The law makes no provision for the original books of record of another court being read in evidence, but provides for certified copies." Styles v. Gray, 10 Texas, 503. Under our statute laws the Secretary of State is made the custodian of the archives of the State Department, and he is required to give copies of records to any person applying for same, and it is expressly provided that such certified copies of certificates shall be received in evidence in all cases in which the originals would be evidence. Rev. Stats., arts. 61, 2252, 2253, 2720, 2721.

By article 1, section 8, subdivision 18, Constitution of the United States, Congress is given the power to exercise exclusive legislation and like authority over all places purchased by the consent of the Legislature of the State in which the same shall be for the location of forts, magazines, arsenals, dock yards, and other needful buildings. In Commonwealth v. Clary, 8 Massachusetts, 72, it was held that "the courts of the commonwealth can not take cognizance of offenses committed upon lands in the town of Springfield which have been purchased by the United States for the purpose of erecting arsenals, etc., to which the consent of the commonwealth was granted," etc., and that decision has subsequently been adopted and followed in the Circuit Court of the United States. United States v. Cornell, 2 Mason, 60. And in United States v. Davis, 5 Mason, 356, it was held that a reservation in a cession

of "concurrent jurisdiction" to serve State processes, civil and criminal, in the ceded place, does not exclude the exclusive legislation or exclusive jurisdiction of the United States over the ceded place. It merely operates as a condition of the grant. Crimes committed in such localities are within the jurisdiction of the United States courts, and under the express provisions of the United States statutes are made liable to and receive the same punishment as the laws of the State in which such forts, dock yards, navy yards, arsenals, armories, or magazines, or other place ceded as aforesaid is situated provide for in like offenses when committed within the boundary of any county of such State. In other words, the crimes are triable in the courts of the United States, but are punished as is provided by the State law.

But the question in the case before us is not limited as to whether the court ruled rightly with regard to the offered evidence under the facts stated. The further question is whether or not the lower court and this court should not and will not take judicial cognizance of the fact that Fort McIntosh is a military post ceded to the United States government, and as such that crimes committed within said fort are beyond the jurisdiction of the courts of this State. If the lower court should have taken judicial knowledge of this fact, and if this court should now take judicial knowledge of said fact, then it follows that the lower court had no jurisdiction, and the prosecution should be dismissed.

Judicial knowledge is taken of such essential historic facts as have exercised controlling influence on the commonwealth. The same rule applies to any matters of public history affecting the whole public. 12 Am. and Eng. Encyc. of Law, p. 174.

The fact of cession and segregation of a portion of the territory of a State to exclusive foreign jurisdiction and control is one of the highest acts of sovereignty, and one which affects the people of the State at large. The courts of New York have taken judicial knowledge of the historical fact that the western portion of its territory was by its own act ceded to Massachusetts. The People v. Snyder, 41 N. Y., 397.

In Wills v. The State, 3 Heiskell, 141, it was held that "the court will take judicial notice that, during the temporary occupancy of the adjacent grounds used by the United States forces while preparing cemetery grounds, the jurisdiction was exclusive in the United States, so that the State could not punish a misdemeanor committed therein during such occupancy;" and in Alabama it is held that it is customary for the courts to take judicial knowledge of what ought to be known within the limits of their jurisdiction. Gordon v. Tweedy, 74 Ala., 232.

The courts in Texas have taken judicial notice of the existence and conditions of the several colonial land contracts made with individuals (Hatch v. Dunn, 11 Texas, 708; Robertson v. Teal, 9 Texas, 344;

Wheeler v. Moody, 9 Texas, 372; Williamson v. Simpson, 16 Texas, 433; Chadoin v. Magee, 20 Texas, 476); and this court has held that it takes judicial knowledge of the fact that the Indian Territory is beyond the jurisdiction of the State of Texas. Conner v. The State, 23 Texas Ct. App., 378. In Boston v. The State, 5 Texas Court of Appeals, 383, it is held that courts take judicial cognizance of the territorial extent of the sovereignty and jurisdiction exercised by their own government. Citing 1 Greenl. Ev., sec. 6.

It is unnecessary to discuss other questions presented on this appeal, because, in our opinion (for the reasons above stated), the District Court of Webb County had no jurisdiction to hear and determine an offense committed within a fort belonging to the exclusive jurisdiction of the United States, and therefore the judgment is reversed and the prosecution dismissed.

Judges all present and concurring.

### ON REHEARING.

December 12, 1891.—The former judgment of this case, dismissing the prosecution, is, on motion of the Assistant Attorney-General, set aside, and instead of being dismissed the judgment will now be that the cause be reversed and remanded for another trial.

The reason for this action is that the indictment charges an offense committed in Webb County. The evidence showing that it was committed inside of Fort McIntosh is circumstantial. It is suggested by the Assistant Attorney-General that possibly the State on another trial might be able to show that it was in fact committed in Webb County, but outside the limits of Fort McIntosh. In view of the possibility that such might be the case, judgment will be rendered reversing the case and remanding it for another trial in the lower court. Motion for rehearing granted, judgment reversed, and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.