

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

October 5, 1951

Hon. Homer Garrison, Jr., Director
Department of Public Safety
Camp Mabry
Austin, Texas　　　　　Opinion No. V-1300

　　　　　　　　　Re: The right of Texas Rangers
　　　　　　　　　　　and other Texas peace offi-
　　　　　　　　　　　cers to enter Big Bend
　　　　　　　　　　　National Park to investi-
　　　　　　　　　　　gate alleged violations of
　　　　　　　　　　　Texas Penal Laws.

Dear Colonel Garrison:

　　　　You have asked our advice concerning the pro-
priety of Texas Rangers and other Texas peace officers
entering Big Bend National Park for the purpose of detect-
ing and investigating possible crimes against the laws of
the State of Texas. You are particularly concerned with
the question of the authority of such officers to make in-
vestigations within the boundaries of the park in view of
the cession by Texas of jurisdiction over the park to the
United States for national park purposes.

　　　　The deed of cession was executed on December 30,
1943, and expressly provides that the State of Texas does
"hereby cede to the United States of America exclusive ju-
risdiction over the above described tracts or parcels of
land" with certain exceptions with respect to service of
civil and criminal processes, the levying, assessing, and
collecting of certain taxes, and reserving to the people
residing in the park the right to vote at elections with-
in Brewster County.

　　　　Immediate interest in the questions presented
is occasioned by the mysterious disappearance of a Texas
citizen in the vicinity of the park under circumstances
suggesting the propriety of a thorough investigation to
determine the circumstances of the disappearance and the
possibility of criminal acts having been committed against
a Texas citizen and the laws of the State of Texas. You
state that the circumstances of the case have been brought

to your attention with the request that you take steps
to investigate the matter. Because of certain evidence
found within the boundaries of the park, it is necessary
for the Texas peace officers to go into the park in order
properly to carry on their investigation.

Because of the deed of cession above mentioned,
a question has arisen in your mind as to whether State
officers should assume the investigation inside the bound-
aries of the park and as to the duty of Texas peace offi-
cers to conduct such investigation within such boundaries.
Particularly, you desire to know whether Texas peace of-
ficers have the authority to enter the boundaries of the
Big Bend National Park and there conduct an investigation
for the purpose of ascertaining whether an alleged crime
against the laws of the State of Texas actually occurred,
and if so the place where the crime was committed.

The Big Bend National Park is located wholly
within the boundaries of the State of Texas and more par-
ticularly within the boundaries of Brewster County, Texas.
We know of no Federal law or regulation pertaining to the
operation or government of a national park which would
categorically prevent such a criminal investigation by
State officers. It is reasonable to assume that no stat-
ute, rule, or policy of the Federal Government applicable
to the maintenance of national parks is intended to pre-
vent a State agency from ferreting out violations of the
State law or from entering the park for that purpose.

Conflicts of jurisdiction, whether political or
judicial, can arise only in connection with specific fac-
tual situations wherein conflicting claims in the name of
one or the other of the governments are involved. Recon-
ciliation of such conflicts involves examination of the
law relating to the particular claims and the facts on
which they are based. Questions as to what officers may
arrest and detain prisoners to the exclusion of others
are likewise dependent on the basis of the arrest and
the facts surrounding and leading up to the arrest. The
jurisdiction of courts to hear charges of crime may de-
pend on the place where the crime or any part thereof
was committed, which cannot be determined until after an
investigation is made to determine those matters.

This latter statement is clearly illustrated
in the case of Lasher v. State, 17 S.W. 1064 (Tex. App.

1891), in which the defendant was tried in the State court
for committing the act of forgery in Fort McIntosh.  The
Federal Government had been ceded exclusive jurisdiction
to the land comprising Fort McIntosh with the State re-
taining concurrent jurisdiction only so far as was neces-
sary for all process, civil or criminal, issued under the
authority of the State or of any of the courts or judicial
officers thereof, to be executed by the proper officers
of the State on any person amenable to the same within the
limits of the land so ceded.  The Court in its original
opinion, reversed and dismissed the prosecution, saying:

> ". . . In Com. v. Clary, 8 Mass. 72, it
> was held that 'the courts of the commonwealth
> cannot take cognizance of offenses committed
> upon lands in the town of Springfield which
> have been purchased by the United States for
> the purpose of erecting arsenals, etc., to
> which the consent of the commonwealth was
> granted,' etc., and that decision has subse-
> quently been adopted and followed in the cir-
> cuit court of the United States.  U. S. v.
> Cornell, 2 Mason, 60.  And in U. S. v. Davis,
> 5 Mason, 356, it was held that a reservation
> in a cession of 'concurrent jurisdiction' to
> serve state processes, civil and criminal,
> in the ceded place, does not exclude the ex-
> clusive legislation or exclusive jurisdiction
> of the United States over the ceded place.  It
> merely operates as a condition of the grant.
> Crimes committed in such localities are with-
> in the jurisdiction of the United States courts,
> and, under the express provisions of the United
> States statutes, are made liable to and receive
> the same punishment as the laws of the state in
> which such forts, dock-yards, navy-yards, arse-
> nals, armories, or magazines, or other place
> ceded as aforesaid is situated provide for in
> like offenses when committed within the boundary
> of any county of such state.  In other words,
> the crimes are triable in the courts of the
> United States, but are punished as is provided
> by the state law.  . . ."

On motion for rehearing the court set aside its
judgment of dismissal and remanded the case, holding:

"The reason for this action is that the indictment charges an offense committed in Webb county. The evidence showing that it was committed inside of Ft. McIntosh is circumstantial. It is suggested by the assistant attorney general that possibly the state on another trial might be able to show that it was in fact committed in Webb county, but outside the limits of Ft. McIntosh. In view of the possibility that such might be the case, judgment will be rendered reversing the case, and remanding it for another trial in the lower court. Motion for rehearing granted, judgment reversed, and cause remanded."

In remanding the case, the Court in effect said that before the Court can decide the case it must know where the offense occurred, and this can only be determined by an investigation of the locales where circumstances tend to show the offense occurred.

We cannot, therefore, categorically define the authority of Texas Rangers or peace officers in general terms applicable to any and all situations which might arise involving the territory of Big Bend National Park. It is our opinion, however, that Texas officers, acting peacefully, may enter Big Bend National Park for the purpose of determining whether a crime has been committed over which the State has jurisdiction.

In County of Allegheny v. McClung, 53 Pa. 482 (1866), an explosion occurred within a Federal arsenal in the State. The exclusive jurisdiction over the arsenal had been ceded by the State to the Federal Government, but the State had retained the right of concurrent jurisdiction for the service of civil and criminal process. McClung, a coroner in Pennsylvania, investigated the deaths occurring from a blast in the arsenal. He sued the county of Allegheny for his fee covering the investigation. The county defended on the ground that he had no right to hold an inquisition within the arsenal grounds, the jurisdiction of the Government of the United States being exclusive within those grounds. In allowing McClung compensation, the Court said:

". . . It would not, I repeat, be doing great violence to the language of the proviso to hold the official acts of so important a

public agent, inquiring for the whole body of the Commonwealth into a suspected crime, as embraced within the purview of the enactment; but it is unnecessary in this case to resort to any strained or doubtful interpretation, for whatever were the exclusive rights of the general government, they had not been claimed or asserted. No Act of Congress had forbidden the State to send its appropriate agent to investigate the cause of a great public calamity, and no government official had kept him out of the grounds. Nor is the Federal Government, or any one for it, complaining of the invasion of its exclusive jurisdiction. The coroner's presence and proceedings were attended with the implied if not the express sanction of both governments, and were demanded by the exigencies of the occasion." (Emphasis supplied.)

We cannot believe that cession by Texas and acceptance by the United States of the park were intended to create artificial barriers to such activities. The park is not a sanctuary for criminals nor a hiding place for evidence of their crimes.

## SUMMARY

Texas peace officers may enter Big Bend National Park for the purpose of determining whether a crime has been committed over which the State has jurisdiction.

APPROVED:

Ned McDaniel
State Affairs Division

Jesse P. Luton, Jr.
Reviewing Assistant

Charles D. Mathews
First Assistant

MR:jmc

Yours very truly,

PRICE DANIEL
Attorney General

By *Milton Richardson*
Milton Richardson
Assistant