Ivan C. THOMPSON, Petitioner,

v.

UNITED STATES of America,
Respondent.

Gregory T. GIVENS, Petitioner,

v.

UNITED STATES of America,
Respondent.

Nos. 75–8086 and 76–8014.

United States Court of Appeals,
District of Columbia Circuit.

Nov. 24, 1976.

Michael L. Rankin, Washington, D. C., was on the pleading for petitioner in No. 75–8086.

Paul G. Evans, Baltimore, Md., was on the pleading for petitioner in No. 76–8014.

Before TAMM and ROBINSON, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

**SPOTTSWOOD W. ROBINSON, III, Circuit Judge:**

█ The Superior Court of the District of Columbia has original jurisdiction over "any criminal case under any law applicable exclusively to the District of Columbia."[1] Petitioners Thompson and Givens were each charged in unrelated proceedings in the Superior Court with assaulting a District of Columbia police officer, in violation of D.C. Code § 22–505(a).[2] Each has consistently claimed that since § 22–505(a) might have extraterritorial effect[3] it is not "applicable exclusively to the District of Columbia," and hence violations of that section were not cognizable in the Superior Court. The District of Columbia Court of Appeals disagreed,[4] and Thompson and Givens now petition this court for allowance of an appeal from the Court of Appeal's determination that the Superior Court had power to act in their cases.

To sustain *our* jurisdiction, petitioners rely upon D.C.Code § 11–301(1), which authorizes this court to review judgments of the Court of Appeals "with respect to violations of criminal laws of the United States which are not applicable exclusively to the District of Columbia."[5] As we find that their cases fall outside that jurisdictional grant, their petitions must be dismissed.

Section 11–301 is a small part of a complex congressional scheme for eliminating historic "jurisdictional disarray" in the District of Columbia by reorganizing the courts into a "federalized" system.[6] Prior to the enactment of the District of Columbia Court Reform and Criminal Procedure Act

1. D.C.Code § 11–923 (1973) provides:
 (a) The Superior Court has jurisdiction over all criminal cases pending in the District of Columbia Court of General Sessions before the effective date of the District of Columbia Court Reorganization Act of 1970.
 (b)(1) Except as provided in paragraph (2), the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia.
 (2) The Superior Court shall not have jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia begun in the United States District Court for the District of Columbia under Section 11–502(2) by the return of an indictment or the filing of any information during the eighteen month period beginning on such effective date.

2. D.C.Code § 22–505(a) (1973) provides:
 (a) Whoever without justifiable and excusable cause, assaults, resists, opposes, impedes, intimidates, or interferes with any officer or member of any police force operating in the District of Columbia, or any officer or member of any fire department operating in the District of Columbia; or any officer or employee of any penal or correctional institution of the District of Columbia, or any officer or employee of the government of the District of Columbia charged with the supervision of juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere, while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than five years or both. It is neither justifiable nor excusable cause for a person to use force to resist an arrest when such arrest is made by an individual he has reason to believe is a law enforcement officer, whether or not such arrest is lawful.

3. Section 22–505(a) expressly includes assaults in District of Columbia facilities located outside the District, see note 2 *supra*, and would apply by implication also to assaults on District policemen engaged in official duties elsewhere. See *United States v. Perez*, 488 F.2d 1057 (4th Cir. 1974).

4. The Superior Court dismissed Thompson's indictment, but the District of Columbia Court of Appeals ordered it reinstated. *United States v. Thompson*, 347 A.2d 581 (D.C.Ct.App.1975). It held that since the several provisions of § 22–505(a) are separable, only those defendants charged with an assault outside the District of Columbia would have standing to raise the jurisdictional point; because the alleged assaults occurred within the District, Thompson was foreclosed from so doing. *Id.* at 583–585. Advertently to the decision in Thompson, the Superior Court convicted Givens of the offense, and the District of Columbia Court of Appeals affirmed in a decision as yet unreported. *Givens v. United States*, No. 8862 (D.C.Ct.App., Jan. 14, 1976). See also *White v. United States*, 358 A.2d 645, 646 (D.C.Ct.App.1976).

5. See text *infra* at note 22.

6. H.R.Rep.No.91–907, 91st Cong., 2d Sess. 33 (1970), hereinafter cited "House Report."

of 1970,[7] original jurisdiction over all felony cases resided in the United States District Court for the District of Columbia.[8] On the other hand, the District of Columbia Court of General Sessions—the predecessor of the Superior Court—tried misdemeanor cases based on federal law,[9] as did the District Court.[10] Appeals from the Court of General Sessions went to the District of Columbia Court of Appeals,[11] which this court was empowered to review.[12] These jurisdictional anomalies, as well as substantial grants of concurrent jurisdiction, produced "delays in the disposition of criminal matter . . . in derogation of the public and federal interest."[13]

 The Court Reform Act attempted to eliminate these oddities by assimilating the jurisdiction of the District Court and this Court to that of their federal counterparts elsewhere, and by endowing the Superior Court and the District of Columbia Court of Appeals with powers similar to those of state courts.[14] The Superior Court now has exclusive original jurisdiction over all local criminal matters, and no jurisdiction to try those charged with offenses defined in the United States Code.[15] It is subject to review by the District of Columbia Court of Appeals,[16] which has become the "highest court of the District,"[17] and the Court of Appeal's decisions are reviewable by the Supreme Court on the same basis as those emanating from the states.[18] This contrasts with the previous mode of appellate review,[19] as the House Report noted:

> At present, appeals from the Court of General Sessions go to the District of Columbia Court of Appeals, and then to the United States Court of Appeals for the District of Columbia Circuit, and then to the Supreme Court of the United States. . . . The reorganization recommended here makes the District of Columbia Court of Appeals the highest local Court. . . . Its decisions will be appealable directly to the United States Supreme Court. *This provision removes the existing double level of appeals through the local circuit court.* The structure of

7. Act of July 29, 1970, Pub.L.No.91–358, 84 Stat. 473, codified in D.C.Code Title 11 *et passim* (1973).

8. See Act of Dec. 23, 1963, Pub.L.No.88–241, § 11–521, 77 Stat. 482. *Cf.* House Report, *supra* note 6, at 33.

9. See Act of Dec. 23, 1963, Pub.L.No.88–241, § 11–963(a)(1), 77 Stat. 490. Cf. House Report, *supra* note 6, at 33.

10. Compare Act of Dec. 23, 1963, § 11–521, 77 Stat. 482 with *id.*, § 11–963(a)(1), 77 Stat. 490.

11. See Act of Dec. 23, 1963, Pub.L.No.88–241, § 11–741, 77 Stat. 482.

12. See Act of Dec. 23, 1963, Pub.L.No.88–241, § 11–301, 77 Stat. 490.

13. House Report, *supra* note 6, at 33. See S.Rep.No.91–405, 91st Cong., 1st Sess. 3 (1969).

14. S.Rep.No.91–405, 91st Cong., 1st Sess. 5 (1969) ("this transfer will bring the jurisdiction of the U. S. Courts of the District of Columbia in line with the jurisdiction exercised by the Federal courts in the several states, and will give the local courts jurisdiction over all purely local matters") House Report, *supra* note 6, at

34–35; *Palmore v. United States,* 411 U.S. 389, 392 n.2, 93 S.Ct. 1670, 1673 n.2, 36 L.Ed.2d 342, 348 n.2 (1973); *Palmore v. Superior Court,* 169 U.S.App.D.C. 323, 337–338, 515 F.2d 1294, 1308–1309 (1975), *vacated and remanded on other grounds,* —— U. S. ——, 97 S.Ct. 305, 50 L.Ed.2d 280 (1976).

15. Compare D.C.Code § 11–923 (1973), quoted *supra* note 1, with D.C.Code § 11–502 (1973) (governing withdrawal of local criminal jurisdiction from the District Court). See note 18 *infra.*

16. D.C.Code § 11–721 (1973).

17. D.C.Code § 11–102 (1973):
The highest court of the District of Columbia is the District of Columbia Court of Appeals. Final judgments and decrees of the District of Columbia Court of Appeals are reviewable by the Supreme Court of the United States in accordance with section 1257 of title 28, United States Code.

18. 28 U.S.C. § 1257 (1970).

19. Act of Dec. 23, 1963, Pub.L.No.88–241, § 11–321, 77 Stat. 479.

both appeals courts is changed: when the recommended transfers are *accomplished*, the local appeals court will have jurisdiction comparable with State court; and the Federal appeals court will be comparable with other Federal appeals courts.[20]

■ These "recommended transfers" could not have been accomplished *instanter*, however, without risk not only of substantial dislocation but also of prejudice to those already litigating in what was to become an exclusively "local" system. Congress therefore provided for a gradual conversion of the local jurisdiction of the District and Superior Courts.[21] Congress also adopted Section 11–301 of the District of Columbia Code, on the interpretation of which the case at bar depends:

> In addition to its jurisdiction as a United States court of appeals and any other jurisdiction conferred on it by law, the United States Court of Appeals for the District of Columbia Circuit has jurisdiction of appeals from judgments of the District of Columbia Court of Appeals—
>
> (1) with respect to violations of criminal laws of the United States which are not applicable exclusively to the District of Columbia . . .; or

(2) entered before the effective date of the District of Columbia Court Reorganization Act of 1970 in any other case . . . .[22]

■ The effect of subsection (2) was to allow this court to entertain a petition for review of any judgment of the District of Columbia Court of Appeals entered before February 1, 1971,[23] and it is transitional in nature. Petitioners' claim is that subsection (1) is not transitional, but rather empowers this Court to continue to hear challenges to the Court of Appeal's interpretations of the Superior Court's criminal jurisdiction. The statutory language, wrenched from its context, might conceivably be so read. We refuse, however, to allow literalness to "strangle the meaning"[24] of Section 11–301(1).

■ The power that petitioners press on this court would represent the lone instance in which we might review decisions of the District of Columbia Court of Appeals, and a most peculiar one at that. That court, and not this court, is now the final expositor of local law.[25] We can discern no sound rationale for an exception to this proposition for the purpose merely of allowing this court to review that court's construction of a predominantly local crimi-

---

20. House Report, *supra* note 6, at 34–35 (emphasis added).

21. The District Court's criminal jurisdiction was first to change on February 1, 1971—the effective date of the Act—after which it retained jurisdiction over only seven specifically enumerated District of Columbia Code offenses in addition to its jurisdiction *qua* district court. After June 1, 1972, the only nonfederal criminal offenses over which the District Court was to have jurisdiction were those "joined in the same information or indictment with any Federal offense," and so it remains today. D.C. Code § 11–502 (1973). The powers yielded by the District Court were to vest simultaneously in the Superior Court. D.C.Code § 11–923 (1973). Removal of criminal cases to the District Court was to be governed by the precepts applicable to all other district courts. D.C. Code § 11–503 (1973). At the same time, the civil jurisdiction of the two courts was adjusted in similar manner. See D.C.Code §§ 11–501, 11–921 (1973).

22. D.C. Code § 11–301 (1973).

23. The effective date of the Act. Act of July 29, 1970, § 199(c), 84 Stat. 598.

24. *Lynch v. Overholser*, 369 U.S. 705, 710, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211, 215 (1962), citing *Utah Junk Co. v. Porter*, 328 U.S. 39, 44, 66 S.Ct. 889, 892, 90 L.Ed. 1071, 1074 (1946); *Markham v. Cabell*, 326 U.S. 404, 409, 66 S.Ct. 193, 195–196, 90 L.Ed. 165, 168 (1945); *Church of the Holy Trinity v. United States*, 143 U.S. 457, 459–462, 12 S.Ct. 511, 512, 36 L.Ed. 226, 228 (1892).

25. We have so recognized, *United States v. Peterson*, 157 U.S.App.D.C. 219, 483 F.2d 1222, 1235 n.85, *cert. denied*, 414 U.S. 1007, 94 S.Ct. 367, 38 L.Ed.2d 244 (1973); *Williams v. Washington Metropolitan Area Transit Comm'n*, 153 U.S.App.D.C. 183, 191, 472 F.2d 1258, 1266 (1965), as has the District of Columbia Court of Appeals, *District of Columbia v. Schwerman*, 327 A.2d 818 (1974); *District of Columbia v. Smith*, 297 A.2d 787 (1972); *M.A.P. v. Ryan*, 285 A.2d 310 (1971).

nal statute in its bearing upon the jurisdiction of a local court. Such an exception would defy the overarching congressional intent [26] that the courts in the District of Columbia be reconstituted into separate and independent systems—one local, and the other federal and "freed of [its] local jurisdiction." [27] To be sure, a ruling that the Superior Court does or does not have jurisdiction of a particular matter stands as a precedent also with respect to the coordinated jurisdiction of the District Court. But when jurisdictional problems incidentally involving the federal judiciary arise in state courts, the exclusive federal forum for review is the Supreme Court, not a federal court of appeals. Without a doubt, that forum is available here.[28]

▮ A much more plausible interpretation of Section 11–301(1) is that asserted in the Attorney General's message transmitting to Congress the bill that eventually became the Court Reform Act. It described Section 11–301 as "preserv[ing] the jurisdiction of the U. S. Court of Appeals for the District of Columbia over appeals from the D.C. Court of Appeals which are pending or may still be filed on the effective date of the act"—thus describing precisely the effect of Section 11–301(2) [29]—"or which involved federal misdemeanors tried in the D.C. Court." [30] That latter result may be obtained only under Section 11–301(1), upon which petitioners would rest our jurisdiction in the instant cases. We may note judicially that many federal misdemeanor cases were pending in either the old Court of General Sessions or the District of Columbia Court of Appeals during the period of congressional consideration of the Act.[31] Congress apparently wished to preserve as a part of the machinery for appeals in those cases a federal forum intermediate to the Supreme Court, as was the situation prior to the Act.[32] Since there was no way to predict the length of time necessary for a case to travel from the Superior Court through the District of Columbia Court of Appeals and ultimately to this court, it is

26. "In constituting the lower trial court as a purely local court, similar to a state court, it follows that appeals from the local court should be treated like those in state systems, and that the channel of appeals should be directly through the United States Supreme Court." House Report, *supra* note 6, at 34. *Cf.* Senate Comm. on District of Columbia, Statement of Managers regarding the Conference Action upon S. 2601 at 4 (1970). This was clearly also the view of the legislation's sponsor, the Executive Branch. See *Hearings on S. 1066, S. 1067, S. 1214, S. 1215, S. 1711, and S. 2601 before the Comm. on the District of Columbia and Subcomm. on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 91st Cong.,* 1st Sess. at 1150–1151 (July 15, 1969) (remarks of Deputy Attorney General Kleindienst), hereinafter cited "Hearings."

27. Hearings, *supra* note 26, pt. 3 at 1183 (remarks of the Honorable David L. Bazelon). The exchange between Chief Judge Bazelon and several committee members manifests agreement that the Act was intended to "[do] away with the certiorari to your court from the District of Columbia Court of Appeals," *id.* at 1184, and that one possible boon of the Act was to make this court's jurisdiction fungible with that of other circuit courts, thus facilitating any later "reshuffling" of judicial circuits. *Id.* at 1183.

28. See notes 14–15 *supra* and accompanying text.

29. See text *supra* at note 20.

30. Hearings, *supra* note 26, at 1140.

31. Some idea of the situation may be drawn from statistics cited during the hearings forerunning the Act. In 1968, 17,440 federal criminal cases were filed in the Court of General Sessions. Hearings, *supra* note 26, at 578. A list of criminal cases pending in the District of Columbia Court of Appeals on July 1, 1969, indicates that the length of time necessary for disposition varied from four months for one case decided without argument to two years, and that nearly ten percent of its criminal docket had been pending for more than one year. *Id.* at A–738. See also House Report, *supra* note 6, at 36.

32. This inference is borne out to some extent by concern expressed by Senator Tydings, chairman of the committee hearings, that elimination of this court as an intermediate appellate court would inundate the Supreme Court with petitions for writs of certiorari. See Hearings, *supra* note 26, at 1160 (exchange with Richard Kleindeinst), *id.* at 1184 (exchange with Chief Judge Bazelon).

understandable that no time restriction was incorporated in Section 11–301(1).

 By our construction, then, Section 11–301(1) permits us to review decisions of the District of Columbia Court of Appeals only in cases involving federal offenses tried in the Superior Court. Because the Superior Court has not had jurisdiction of prosecutions of that type since the effective date of the Act,[33] the possibility of review under that section is nearing extinction.[34] This reading of Section 11–301(1) is at once more in accord with Congress' "federalization" scheme and more nearly symmetrical with others of the provisions for transfer of jurisdiction contained in the Court Reform Act.[35] It is consistent also with the pronouncements of courts and commentators alike.[36] Since neither petitioner stands charged with a federal misdemeanor, their cases are not within our jurisdiction, and their petitions for leave to appeal are accordingly dismissed.

*So ordered.*

**33.** See District of Columbia Code § 11–923(b)(1) (1973), quoted *supra* at note 1. This provision, whether or not it divests the Superior Court of jurisdiction of District of Columbia Code offenses that have extraterritorial effect (as the petitioners claim), most certainly is intended to divest that Court of jurisdiction to hear criminal cases involving United States Code offenses. *Cf.* District of Columbia Code § 11–923(c)(2) (1973) (giving the Superior Court power to conduct even preliminary examination of United States Code offenders only until June 1, 1972).

**34.** It may well be that many cases remaining in this category involved fugitivity, insanity, or *some other* condition delaying indefinitely the progress of the proceeding.

**35.** *Cf.* D.C. Code §§ 11–501, 11–502, 11–921–923 (1973).

**36.** See Williams, *District of Columbia Court Reorganization,* 1970, 59 Geo.L.Rev. 477, 536 (1971) (§ 11–301(1) governs "federal misdemeanor cases heretofore triable in the General Sessions Court"). *Cf. Palmore v. United States, supra* note 14, 411 U.S. at 392–393 n.2, 93 S.Ct. 1673–1674, n.2, 36 L.Ed.2d at 348–349 n.2 (the local court system is independent and not subject to our review); *McCall v. Swain,* 166 U.S.App.D.C. 214, 219–220, 510 F.2d 167, 181 (1975) (same); *Bland v. Rodgers,* 332 F.Supp. 989, 991 (D.D.C.1971) (same). It is of note that Senator Tydings, the manager of the Court Reform Act, has opined that "the separate character of the new local court system is assured by the elimination of certiorari-like jurisdiction of the federal court of appeals over judgments of the D.C. Court of Appeals." Tydings, *District of Columbia Court Reform and Court Procedure Act of 1970: An Overview,* 37 J.D.C.Bar Ass'n 20, 22–23 (Aug.-Dec. 1970).