Mary C. CARSON (No. 79–227), Gail Bederman (No. 79–228), Warren S. Hoskins (No. 79–229), Karen Malpede (No. 79–230), Ralph Digia (No. 79–231), Linnea C. Lacefield (No. 79–232), Karl Bissinger (No. 79–233), Grace Paley (No. 79–234), Van Zwisohn (No. 79–235), Glen R. Pontier (No. 79–236), Appellants,

v.

UNITED STATES, Appellee.

Nos. 79–227 through 79–236.

District of Columbia Court of Appeals.

Argued June 30, 1980.

Decided Sept. 4, 1980.

---

Jules L. Lobel, Brooklyn, N. Y., of the bar of the State of New York, pro hac vice, by special leave of court, with whom Eric M. Lieberman, of the bar of the State of New York, and Janis Kapler were on the brief, for appellants.

Richard C. Bicki, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, John R. Fisher, and Kenneth M. Raisler, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KERN and GALLAGHER, Associate Judges, and HAYWOOD, Associate Judge, Superior Court of the District of Columbia.*

GALLAGHER, Associate Judge:

Appellants were convicted of unlawful entry, D.C.Code 1973, § 22–3102,[1] following a jury trial. The convictions arose out of events which took place on September 4, 1978, when appellants, after exiting the White House tour, left the tourist line and entered onto the White House lawn. They thereupon proceeded to unfurl a banner which read "No Nuclear Weapons–No Nuclear Power–U.S.A. or U.S.S.R."[2]

At trial, the government presented evidence that at approximately 10:30 a. m. appellants were observed walking on the lawn toward the fountain which faces Pennsylvania Avenue, approximately 75 to 100 yards beyond a chain barrier which borders the tourist walkway. In the course of the next eight to ten minutes, several uniformed members of the Secret Service, including Captain Edwin Elgin, watch commander in charge of the White House grounds, intercepted appellants as they dispersed over the White House lawn and informed them that their action was unlaw-

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

1. This statute provides, in pertinent part:
   § 22–3102. Unlawful entry on property.
   Any person who, without lawful authority, shall enter, or attempt to enter, any public or private dwelling, building or other property, or part of such dwelling, building or other property, against the will of the lawful occupant or of the person lawfully in charge thereof, or being therein or thereon without lawful authority to remain therein or thereon shall refuse to quit the same on the demand of the lawful occupant, or of the person lawfully in charge thereof, shall be deemed guilty of a misdemeanor, ....

2. Appellants assert that they acted in coordination with other members of their group who traveled to Moscow to conduct a similar, simultaneous demonstration. [E. g., Tr. at 528–300.]

ful. In addition, Captain Elgin caused the entire group to be assembled at the fountain where he informed them that they were free to leave, that they would not be arrested if they left, but that if they refused to leave they would be arrested for violation of the D.C.Code. When the appellants failed to leave, they were arrested. The entire episode lasted approximately ten minutes and took place wholly within the hours when the White House was open to the public for tours.

■ Appellants contend that the government has failed to establish the elements of the crime of unlawful entry because although the prosecution introduced evidence to show that the defendants remained on the lawn against the will of the person in charge, nothing was introduced at trial to show that there was some sign or notice indicating that defendants' presence on the lawn was unlawful. Asserting that a statute may be void for vagueness if it is "an unrestricted delegation of power, which in practice leaves the definition of its terms to law enforcement officers," *Washington Mobilization Committee v. Cullinane*, 184 U.S. App.D.C. 215, 225, 566 F.2d 107, 117 (1977), appellants further contend that to uphold the convictions in this case would render the statute unconstitutionally vague. This is so, they argue, because if the only evidence introduced upon which a conviction could be based is that the officer in charge told defendants to leave, then under the statute an individual can be convicted merely because he or she refuses to obey an order by an officer to leave a public place even if there is no evidence that defendant's presence was otherwise unauthorized.

The government seems to urge a quite different view of the statute, asserting that a person may be convicted of unlawful entry even if he is lawfully on the premises and exercising his First Amendment rights, provided he refuses to depart upon a demand to do so.[3] The government misapprehends the law. In *Leiss v. United States*, D.C.App., 364 A.2d 803 (1976), this court concluded that the constitutionality of the

unlawful entry statute is saved precisely because "an individual's otherwise lawful presence is not conditioned upon the mere whim of a public official." *Id.* at 806. We said:

> [the statute] prohibits the act of entering or remaining upon any property when such conduct is *both* without legal authority *and* against the expressed will of the person lawfully in charge of the premises. Thus, to be subject to the statute's sanctions, *one must be without legal right to trespass upon the property in question.* [*Id.* (emphasis supplied).]

Thus, under the statute as construed in *Leiss*, individual citizens may not be ejected from public property on the order of the person lawfully in charge absent some additional, specific factor establishing their lack of a legal right to be there. *See United States v. Nicholson*, D.C.Ct.Gen.Sess., 137 Wash.D.L.Rep. 1213, 1216 (July 17, 1969), *aff'd*, D.C.App., 263 A.2d 56 (1970). Such factors may consist of posted regulations, signs or fences and barricades regulating the public's use of government property, or other reasonable restrictions.

■ On consideration of the record, we conclude that the government introduced ample evidence from which the jury could have found that appellants' presence on the White House lawn was unauthorized. There was extensive testimony that the tourist line was separated from the lawn by a chain suspended from stanchions at a height of from eighteen inches to three and one–half feet, over which appellants had to step or jump to reach the area in which they were arrested. In addition, a photograph was introduced into evidence which showed the tourist roadway, the separating chain and the lawn beyond. Thus, the government did introduce evidence to establish both elements of the crime.

■ Appellants also contend that the order requiring them to cease demonstrating violated their First Amendment rights. "[T]he government may make reasonable regulations, unrelated to the content of the

---

3. See Brief for the Government at 15.

message, concerning the time, place, and manner of the exercise of [First Amendment] liberties." *Leiss v. United States, supra* at 807. *See Grayned v. Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Cox v. Louisiana,* 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). In view of the dual public and private nature of the White House, and the legitimate security interest in maintaining control over the extensive grounds, it cannot be said that restriction of public access to portions of the lawn is an unreasonable restraint of appellants' First Amendment rights.

Accordingly, appellants' convictions are *Affirmed.*