David McEACHIN, Appellant,

v.

UNITED STATES, Appellee.

No. 79–610.

District of Columbia Court of Appeals.

Argued Oct. 28, 1980.

Decided June 5, 1981.

Randy I. Bellows, Public Defender Service, Washington, D. C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D. C., was on brief, for appellant. Vito T. Potenza, Public Defender Service, Washington, D. C., also entered an appearance for appellant.

Christopher A. Myers, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Steven C. Tabackman, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before KERN and PRYOR, Associate Judges, and GALLAGHER, Associate Judge, Retired.*

PRYOR, Associate Judge:

■ On November 15, 1978, appellant was arrested while on the premises of the Bolling Air Force Base, a military installation located within the District of Columbia. He was ultimately charged with possession of marijuana (D.C.Code 1973, § 33–402) on that date and two other offenses which stemmed from an incident which allegedly occurred on an earlier date. Thus, he was also charged with unlawful entry (D.C.Code 1973, § 22–3102) of Bolling Air Force Base and petit larceny (D.C.Code 1973, § 22–2202) of tools from a store on the base. Appellant was subsequently convicted of all charges after a trial by jury. On appeal, he seeks reversal on the grounds that (1) the Superior Court lacked subject matter jurisdiction over the offenses with which he was charged; (2) the government failed to establish every element of both petit larceny and unlawful entry; and (3) the court erred in its denial of appellant's request for additional instructions relating to the petit larceny charge.[1] We affirm.

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

1. Counsel for appellant requested an additional instruction which he urged would help the jury delineate the subject matter of the instant larceny from other property mentioned in the course of the trial.

 Having viewed the record, we find no abuse of discretion occasioned by the denial of the request.

I

## SUPERIOR COURT JURISDICTION

Appellant contends that the trial court's denial of his motion to dismiss the informations for lack of jurisdiction in the Superior Court over criminal offenses committed within Bolling Air Force Base was erroneous.[2] Since Bolling is a military installation, he urges that it should be viewed as a federal enclave, with exclusive jurisdiction over it vested in the United States. Citing a number of cases involving crimes committed within federal military enclaves in various states, where federal courts have asserted exclusive jurisdiction for the prosecution of such crimes,[3] appellant urges that the purpose of the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91–358, tit. I, 84 Stat. 475 (1970) (codified at D.C.Code 1973, §§ 11–101 to 23–1705) (hereinafter Court Reform Act or the Act), was to establish "separate and independent [judicial] systems—one local, and the other federal[,]" *Thompson v. United States,* 179 U.S.App. D.C. 76, 81, 548 F.2d 1031, 1036 (1976), as exists in the states, and that the local District of Columbia courts should treat the problem of jurisdiction in the same manner as state courts would. We find no merit in appellant's position for several reasons.

■ In all the cases upon which appellant relies, it was recognized that as a prerequisite to the right of federal courts to exercise exclusive jurisdiction, it is required that the state in which the base is located either have relinquished all rights over its land by cession to the United States, or have con-

2. Appellant's motion was heard and denied by the court immediately before trial.

3. *United States v. Watkins,* 22 F.2d 437 (N.D. Cal.1927); *In re Ladd,* 74 F. 31 (C.C.Neb.1896); *United States v. Meagher,* 37 F. 875 (C.C.Tex. 1888); *State v. Mack,* 23 Nev. 359, 47 P. 763 (1897); *State v. Morris,* 76 N.J.Law 222, 68 A. 1103 (1908); *Lasher v. State,* 30 Tex.App. 387, 17 S.W. 1064, *rev'd on other grounds,* 30 Tex. App. 390, 17 S.W. 1065 (1891).

sented to the purchase or condemnation of its land to the federal government. *United States v. Gliatta*, 580 F.2d 156, 158 (5th Cir. 1978), *cert. denied*, 439 U.S. 1048, 99 S.Ct. 726, 58 L.Ed.2d 728 (1979); *United States v. Holmes*, 414 F.Supp. 831, 837 (D.Md.1976); *Board of Supervisors of Fairfax County, Va. v. United States*, 408 F.Supp. 556, 563 (E.D.Va.1976), *appeal dismissed*, 551 F.2d 305 (4th Cir. 1977).[4] When land or other property is acquired by the United States by purchase or condemnation without the consent of the state legislature, it would not be entitled to exercise exclusive jurisdiction over the property, as the state has retained the right to exercise its general police powers. *See Paul v. United States*, 371 U.S. 245, 264, 83 S.Ct. 426, 437, 9 L.Ed.2d 292 (1963), *Surplus Trading Co. v. Cook*, 281 U.S. 647, 650, 50 S.Ct. 455, 456, 74 L.Ed. 1091 (1930); *United States v. Gliatta, supra* at 158 n.6; *Vincent v. General Dynamics Corp.*, 427 F.Supp. 786, 795 n.9 (N.D.Tex. 1977); *State v. De Berry*, 224 N.C. 834, 836, 32 S.E.2d 617, 618 (1945). Therefore, it does not follow, as appellant contends, that if Bolling Air Force Base was located in any of the fifty states, its status as a military base would automatically confer exclusive jurisdiction on the United States courts.[5]

**4.** *See also* U.S.Const. Art. I, § 8, cl. 17 which provides in pertinent part:

The Congress shall have Power ... [t]o exercise exclusive Legislation in all Cases whatsoever ... over all Places purchased by consent of the Legislature of the State in which the Same shall be, for the Erection of Forts, Magazines, Arsenals, dock-Yards, and other needful Buildings[.]

It has long been held that the term "exclusive Legislation" is the same as "exclusive jurisdiction." *Surplus Trading Co. v. Cook*, 281 U.S. 647, 652, 50 S.Ct. 455, 456, 74 L.Ed. 1091 (1930); *United States v. Gliatta, supra* at 158 n.5.

**5.** Appellant also relies on a statement prepared by the United States Army Corps of Engineers on April 13, 1971, entitled "Jurisdictional Summary, Bolling Air Force Base, Washington, District of Columbia (audited Installation Number 555)" which provides:

This installation consists of 656.83 acres, Fee, 0.00 Acre, Licenses (9), 0.03 Acre, Use Permits (9), 0.51 acre, Easements (2), and 0.03 Acre, Leases (2).

Exclusive jurisdiction over the entire area acquired for use in connection with this installation is vested in the United States. The right of exclusive legislation over all land situated in the District of Columbia is granted to the Congress of the United States pursuant to Article 1, Section 8, Clause 17 of the Constitution of the United States.

The power delegated to Congress embraces full and unlimited jurisdiction subject only to the provisions of the Constitution to provide for the general welfare of the citizens within the District of Columbia and every act of legislation which Congress may deem conducive to that end. (*Gudmundson v. Cardrillo* (126 Fed. (2) 521, [sic], *Keller v. Potomac Electric Power Co.* (261 U.S. 428, [43 S.Ct. 445, 67 L.Ed. 731] etc.).

The acquisition of some of the land as lesser interests and leased areas and disposal of some of the areas by transfer to other Government Agencies has not affected the exclusive jurisdiction vested in the United States. [Hereinafter cited as Jurisdictional Summary.]

He states that this jurisdictional summary should be viewed as the position of the United States that it has exclusive jurisdiction over Bolling on the basis of its being a federal military enclave. While we agree that exclusive jurisdiction over the base is vested in the United States, we find that its basis stems not from the fact that Bolling is a military installation, but from its location within the District of Columbia.

For almost two centuries since the establishment of the District of Columbia as the permanent seat of the national government (*see* Act of July 16, 1790, ch. 28, 1 Stat. 130 (1790) (codified at 4 U.S.C. § 71 (1976)), the United States, through its legislative branch, has maintained exclusive jurisdiction over the District. *See* U.S.Const. Art. I, § 8, cl. 17; *District of Columbia v. John R. Thompson Co., Inc.*, 346 U.S. 100, 104–06, 73 S.Ct. 1007, 1009–10, 97 L.Ed. 1480 (1953). Indeed, Art. I, § 8, cl. 17 of the Constitution gives Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District ... as may, by Cession of particular States, and the Acceptance of Congress, become the seat of the Government of the United States ...." It also grants Congress the power to exercise exclusive legislation over property purchased by the United States with the consent of a state legislature for the erection of military installations. *See* note 4 *supra*. The jurisdictional summary tendered by appellant describes the exclusive jurisdiction of Congress over Bolling Air Force Base as emanating from its jurisdiction over the entire District of Columbia, *see* Jurisdictional Summary, *supra*, as opposed to the second type of property over which Congress also acquires exclusive legislative authority. This is true perforce since the federal govern-

Nor can it be said that the enactment of the Court Reform Act, which established a dual court system in this jurisdiction, precludes the Superior Court of the District of Columbia from exercising jurisdiction over offenses occurring on Bolling Air Force Base. Prior to the passage of the Act, the United States District Court for the District of Columbia and the District of Columbia Court of General Sessions, the precursor of the Superior Court, shared concurrent original original jurisdiction over all misdemeanor offenses committed in the District of Columbia. *Palmore v. United States*, 411 U.S. 389, 392 n.2, 93 S.Ct. 1670, 1673 n.2, 36 L.Ed.2d 342 (1973); *Thompson v. United States, supra*, 179 U.S.App.D.C. at 79, 548 F.2d at 1034, *see* D.C.Code 1967, §§ 11–527, –963(a)(1). In an attempt to relieve the Art. III courts in this jurisdiction of the burden of having to hear purely local matters, and thus to address its attention to concerns more national in scope, Congress enacted the Court Reform Act, which provided for the establishment, *inter alia*, of the Superior Court of the District of Columbia. *Palmore v. United States, supra* 411 U.S. at 408–09, 93 S.Ct. at 1681–82; *Andrade v. Jackson*, D.C.App., 401 A.2d 990, 992 (1979); *Thompson v. United States, supra*, 179 U.S.App.D.C. at 79, 548 F.2d at 1034. The Superior Court was granted original jurisdiction over "any criminal case under any law applicable exclusively to the District of Columbia." D.C.Code 1973, § 11–923(b)(1). Here, appellant was convicted of offenses exclusively applicable under the District of Columbia Code, albeit those offenses occurred on a military base.

▐ It is true, as appellant contends, that he could have been prosecuted under a variety of federal statutes for the crimes he was alleged to have committed. *See* 18 U.S.C. § 1382 (1976) (unlawful entry); 18 U.S.C. § 661 (1976) (larceny); 18 U.S.C. § 13

(1976) (possession of marijuana pursuant to the Assimilative Crimes Act). However, that fact alone does not deprive the Superior Court of its jurisdiction, for "it is clear that where the same act constitutes both a federal offense and a state offense under the police power, the state may prosecute. . . . The mere existence of a similar federal statute does not prevent prosecution under local law for the same offense." *Davis v. United States*, D.C.App., 385 A.2d 757, 759 (1978) (per curiam) (citations omitted). *See United States v. Jones*, 174 U.S.App. D.C. 34, 37, 527 F.2d 817, 820 (1975) (one whose acts constitute violations of both federal and local law may be prosecuted under either "in the absence of a specific federal statute superseding prosecution on the local offense. . . ").

Our opinion in *Davis v. United States, supra*, is illustrative of the jurisdiction of the Superior Court in the instant case. Subsequent to his plea of guilty to the charge of operating a lottery in violation of D.C.Code 1973, § 22–1501, while a patient at the Veterans Administration Hospital in Washington, D.C., Davis sought to have his judgment of conviction set aside on the ground that the Superior Court lacked jurisdiction to decide his case since crimes committed on lands of the United States only constitute violations of federal law. In rejecting appellant's position, we held that "the fact that the offense occurred in a building owned by the United States would not deprive the Superior Court of jurisdiction. . . . Federal jurisdiction over a crime does not arise merely from ownership of the land by the United States." *Id.* at 759–60 (citations omitted).[6]

▐ Contrary to appellant's position that *Davis* is inapposite to sustaining the jurisdiction of the Superior Court in this instance, we perceive no justifiable differ-

---

ment already had exclusive control over the land on which Bolling was built, and thus did not have to acquire it from a state with the consent of its legislature.

6. *See Arshack v. United States*, D.C.App., 321 A.2d 845 (1974), in which it was recognized that crimes committed on the grounds of the

United States Capitol may be prosecuted under the District of Columbia Code in the Superior Court. The same holds true for crimes committed on the White House grounds. *See Carson v. United States*, D.C.App., 419 A.2d 996 (1980); *Whittlesey v. United States*, D.C.App., 221 A.2d 86 (1966).

ence between the right of the lower court to assume jurisdiction over cases involving District of Columbia Code offenses committed on the grounds of federally owned property such as the Veterans Administration Hospital, *see Davis v. United States, supra,* the United States Capitol, *see Arshack v. United States,* D.C.App., 321 A.2d 845 (1974), and the White House, *see Carson v. United States,* D.C.App., 419 A.2d 996 (1980); *Whittlesey v. United States,* D.C. App., 221 A.2d 86 (1966), from its right to exercise jurisdiction over crimes committed on Bolling Air Force Base. To hold otherwise would lead to the kind of anomalous result recognized by the District of Columbia Circuit Court of Appeals in another context in *United States v. Greene,* 160 U.S.App.D.C. 21, 489 F.2d 1145 (1973), *cert. denied,* 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 190 (1974). There, appellant challenged the use of the District of Columbia felony murder statute (D.C.Code 1973, § 22–2401) in conjunction with a United States Code felony statute (18 U.S.C. § 752(a) (1976) (rescuing a federal prisoner)), the result of which led to his conviction of federal felony murder. The Court rejected Greene's contention that the criminal provisions of the D.C.Code were not intended by Congress to be used in implementing statutes of the United States Code relating to "national crimes." It stated:

> To adopt appellant's construction would lead to an anomalous result, one that Congress could not conceivably have intended. If one killed during the course of a robbery on the street in front of a bank, he would be prosecuted for felony murder under the D.C.Code, but if during the course of a robbery in a bank a killing occurred, that robber could not be prosecuted for felony murder under the D.C. Code. Such a construction must be rejected. [*Id.* at 27, 489 F.2d at 1151.]

Likewise, it would be an anomaly in this case to hold that had appellant violated a local criminal statute while just outside the gate at Bolling, he could be prosecuted in the Superior Court; but if he had committed the same criminal offense just inside the military base, he could not be subjected to prosecution in the local court. The criminal provisions of the D.C. Code apply to all property owned by the United States in the District of Columbia unless such property is expressly exempt from coverage by Congress.[7] Having concluded that the Superior Court does have jurisdiction in cases involving criminal offenses committed on Bolling Air Force Base, we move to a consideration of the substantive aspects of this case.

## II

### (A)

█ Appellant perceives error in his conviction for the theft of tools taken from the military exchange known as the Four Seasons store. He urges that the government failed to prove an essential element of the offense, namely, that the goods were taken from an identifiable entity.

The store manager, Ms. Lieselotte Hanson, testified that on November 13, 1978, at approximately 4:00 p. m., she was walking down the middle aisle of the store when appellant, whom she had seen on previous occasions, attracted her attention. She immediately summoned another store employee and told her to keep an eye on appellant. At the same time, Ms. Hanson observed appellant pushing a shopping cart containing store merchandise toward the front of the store. Instead of going to the cash register, appellant headed toward the door. Ms. Hanson followed appellant outside the store and noticed that the boxes inside appellant's shopping cart had neither been placed in the store's brown paper bags nor had the security tape, customarily placed on larger items, been affixed to the boxes. She therefore asked appellant to produce a sales receipt for the items. Appellant stat-

---

7. In addition, D.C. Code 1973, § 4–120 also tends to support the jurisdiction of the Superior Court in this case. Section 4–120 provides:

    The provisions of the several laws and regulations within the District of Columbia for the protection of public or private property and the preservation of peace and order are extended to all public buildings and public grounds belonging to the United States within the District of Columbia.

ed that his wife, who was still inside the store, had the sales slip. He was then requested by Ms. Hanson to accompany her back into the store with the merchandise.

Responding to Ms. Hanson's request to come to her office, which was located in the garden shop in the back of the store, appellant pushed the shopping cart through the store and into the garden shop. However, instead of proceeding to her office, appellant walked around a long counter in the garden shop and then turned back toward the entrance in the main part of the store. He left the cart at the other end of the counter and walked toward Ms. Hanson. As he got closer, Ms. Hanson stepped aside and appellant ran toward the exit. Although she yelled for someone to stop appellant, no one did. Appellant thus made good his escape, leaving the tools behind.

With respect to the ownership of these items, the witness testified:

Q. Thank you. To whom did those items belong?

A. To the Army Air Force Exchange.

Q. Is that a corporation?

A. No, it's not a corporation. It's—how we say—it's run by the Army and Air Force.

Q. Is it a Governmental agency?

A. To a certain extent.

Recognizing that larceny is a crime against possession, we have previously rejected the view that in order to prove the offense, the government must show ownership, see *Washington v. United States*, D.C. App., 213 A.2d 819 (1965); this court held in *Moss v. United States*, D.C.App., 368 A.2d 1131, 1133–34 (1977), that in order

to negate the thief's right to take the property, and to protect him from a second prosecution for the same offense[,] . . . the government can carry its burden of showing possession by proving only that the possessor has greater rights in the property than the accused. . . . The government need only allege and support with some evidence the basis for the complainant's possession of the stolen object.

We find that the government has met its burden of proving that the Army Air Force Exchange Service had superior rights to the goods over appellant. Ms. Lieselotte Hanson testified that she worked for the Exchange Service in the capacity of the manager for the Four Seasons. When questioned as to the nature of the Army Air Force Exchange Service, Ms. Hanson stated that although it was not a corporate entity, it was a quasi-governmental agency. From this undisputed evidence, we conclude that the testimony was sufficient to describe the entity from which appellant was alleged to have taken the power tools, to establish that appellant did not have a right to take the merchandise from the store, and to protect him from being prosecuted a second time for the same offense.

### (B)

At the close of all the evidence, appellant sought dismissal of the unlawful entry charge on the ground that no reasonable juror could fairly conclude guilt beyond a reasonable doubt. In the wake of the court's denial of his motion, appellant asserts reversible error.

It should be noted that this offense was alleged to have occurred on November 13 as opposed to November 15th, the date of arrest. As to the former date, appellant presented an alibi defense and thus denied being on the base. He testified that he and a friend, Ronald Miller, spent the day seeking employment and later playing cards. Miller's testimony was in a similar vein.

The government's evidence, on the other hand, presented a different version of the facts. There was evidence that, except for large groups, individuals entering the installation for other than business purposes, must display military identification or a base pass in order to gain admittance. Additionally, signs are posted at both entrances, as well as every 200 feet along the perimeter of the installation, warning the public not to enter without permission of the base commander.

Several prosecution witnesses, including Ms. Hanson, the store manager, testified

that appellant was seen on the base on November 13, 1978. Sergeant Lawrence Jones, a Security Police Investigator at Bolling Air Force Base, testified that he received a report on the same date that a black male of slender build attempted to remove some merchandise from the Four Seasons store. He appeared at the store and searched the area for a person matching the description but found no one. Sergeant Jones received another report from the Four Seasons on November 15th indicating that the man who had been seen two days earlier had returned, and that he was presently boarding a bus near the store. The suspect was again described as a slender black male wearing dark clothing. After locating the bus and entering it, Sergeant Jones observed two passengers. Only one, however, fit the description earlier received. Unable to produce either military identification or a base pass, appellant was taken by Sergeant Jones to the security office for questioning.

Although appellant first denied being on the base on November 13, 1978, he later admitted being present in the Four Seasons store on that date. Appellant told Sergeant Jones that he had taken three irons and a coffee maker; he denied, however, taking any power tools. Sergeant Jones further testified that appellant had been officially barred from Bolling Air Force Base on February 15, 1978 in a letter, admittedly received by appellant and signed by the base commander.

■■■■ Cases involving the sufficiency of the government's evidence are to be viewed in the light most favorable to the government, "giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact ...." *Curley v. United States*, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). In ruling on motions for judgment of acquittal, the trial court should not take the case away from the jury where a reasonable person could find guilt beyond a reasonable doubt based on the evidence presented. *United States v. Hubbard*, D.C.

App., 429 A.2d 1334, at 1337–1338 (1981); *Morrison v. United States*, D.C.App., 417 A.2d 409, 412 (1980); *Franey v. United States*, D.C.App., 382 A.2d 1019, 1022 (1978). Given the evidence which we have enumerated, we find that the government met its burden so that a juror could reasonably find, by the required standard, that appellant voluntarily entered the premises knowing that he was acting against the will of the person in charge. Accordingly, appellant's convictions are

*Affirmed.*