Charles COLBERT, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 89–1261.

District of Columbia Court of Appeals.

Submitted Nov. 14, 1991.
Decided Jan. 24, 1992.

Thomas Ruffin, Jr., Washington, D.C., appointed by this court, was on the brief, for appellant.

Jay B. Stephens, U.S. Atty., with whom John R. Fisher, Gregory E. Jackson, and Kristan Peters–Hamlin, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, TERRY, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

Appellant Charles Colbert, Jr. was tried by jury and convicted of bribery.[1] D.C.Code § 22–712(a)(2) (1989). His challenges on appeal focus on the unique status of the Washington Area Metropolitan Transit Authority (WMATA), an entity created by an interjurisdictional compact. He contends that because WMATA is not an agency of the District of Columbia, he could not be a "public servant" to whom the bribery statute applies. In addition, appellant contends that the Superior Court of the District of Columbia improperly assumed jurisdiction over his case, because the interstate compact creating WMATA does not expressly grant original jurisdiction to the Superior Court. Unpersuaded by these arguments, we affirm.

In 1987, appellant was employed by WMATA as a construction inspector. His responsibilities included ensuring that independent contractors working for WMATA complied with construction plans and specifications. Between June and October of 1987, appellant was assigned to inspect the construction of a bus wash facility at the garage located on M Street in Southeast Washington. The W.M. Schlosser Construction Company was to perform the construction. The company employed Peter Syed as the project manager, and Robert Thurman as the field superintendent.

At some time in August and September of 1987, appellant allegedly approached both Syed and Thurman several times, requesting "kickback" payments. Syed subsequently notified his supervisor, who in turn notified the Metro Transit Police. To aid their investigation, Syed agreed to wear a hidden tape recorder which recorded a conversation wherein appellant explained to Thurman and Syed the nature of his request for money and the favored treatment that would result in exchange for $500.00. A second meeting was held during which appellant was paid $500.00 in prerecorded funds. This meeting was also secretly recorded. Ultimately, appellant was arrested, charged with bribery, and found guilty.

The threshold issue for our consideration is whether WMATA is an agency of the District of Columbia. The resolution of this question implicates other considerations: appellant's status as a "public servant"; the Superior Court's jurisdiction over the prosecution; and the applicability of D.C.Code § 22–712(a)(2), the bribery statute, to appellant.

I.

Appellant argues that "WMATA is not, and has never been, a District government agency but, rather, operates as an interstate compact, created by federal legislation ... to help in the development of viable commerce in the national capital area.... Hence, WMATA is a federal agency chartered by Congress, but based in part upon a compact formed with two states and the federal government."

---

1. Appellant was sentenced to ten to thirty months' imprisonment, and ordered to pay restitution of $500.00 to the Washington Metropolitan Area Transit Authority.

■ We observe that the Constitution restricts the authority of the states to enter into compacts with one another by providing that "[n]o State shall, without the Consent of Congress ... enter into any Agreement or Compact with another State...." U.S. Const. Art. I, § 10, cl. 3. Congressional consent, however, is required only if the compact affects the political power or influence of particular states or "encroach[es] ... upon the full and free exercise of Federal authority." *Virginia v. Tennessee*, 148 U.S. 503, 520, 13 S.Ct. 728, 735, 37 L.Ed. 537 (1893) (holding that an interstate agreement which did not increase states' political power and encroach upon supremacy of federal government did not fall within the ambit of the Compact Clause and would not be invalidated for lack of congressional consent); *Cuyler v. Adams*, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981) (holding that Congress, when presented with a question of federal law, can give its consent in advance on an interstate agreement); *United States Steel Corp. v. Multistate Tax Commission*, 434 U.S. 452, 98 S.Ct. 799, 54 L.Ed.2d 682 (1978) (holding the Multistate Tax Compact valid under *Virginia v. Tennessee*).[2]

■ Appellant's argument that the clause in the WMATA Compact approving the transportation agreement between the District of Columbia, Maryland and Virginia has transformed WMATA into a federal agency is without merit. Initially, it ignores the explicit language of the Washington Metropolitan Area Transit Authority Compact, which provides in pertinent part:

[t]he purpose of this Title is to create a regional *instrumentality, as a common agency of each signatory party*,[3] empowered, in the manner hereinafter set forth, (1) to plan, develop, finance and cause to be operated improved transit facilities ..., (2) to coordinate the operation of the public and privately owned or controlled transit facilities, ... and (3) to serve such other regional purposes and to perform such other regional functions as the signatories may authorize by appropriate legislation. (Emphasis supplied.)

D.C.Code § 1–2431(2). *See also,* D.C.Code § 1–2431(4) (WMATA is "an instrumentality and agency of each of the signatory parties"). Moreover, our jurisprudence has explicitly acknowledged WMATA's status as an agency of the District of Columbia. This court, in *Qasim v. Washington Metropolitan Area Transit Authority*, 455 A.2d 904 (D.C.), *cert. denied*, 461 U.S. 929, 103 S.Ct. 2090, 77 L.Ed.2d 300 (1983), held that "Section 4 of the Compact expressly established WMATA as an agency of each sovereign signatory of the Compact." Similarly, in resolving whether the plaintiffs had standing to challenge WMATA's compliance with the requirements of the Compact, a federal district court noted that "[t]he Authority itself is merely an agency of each of the signatory parties including the United States on behalf of the District of Columbia...." *The Bootery, Inc. v. Washington Metropolitan Area Transit Authority*, 326 F.Supp. 794, 798–99 (D.D.C. 1971) (footnotes omitted).[4]

Compacts involving interjurisdictional transportation agreements are neither unique nor necessarily federal in nature. In 1921, New York and New Jersey entered into a bi-state compact creating the

---

**2.** *See* Heron, *The Interstate Compact in Transition: From Cooperative State Action to Congressionally Coerced Agreements,* 60 St. Johns L.Rev. 1 (1985).

**3.** The definition section, D.C.Code § 1–2431(1)(d), provides:

"Signatory" means the State of Maryland, the Commonwealth of Virginia and the District of Columbia.

**4.** Since the District of Columbia was established as the permanent seat of the national government (see Act of July 16, 1790, ch. 28, 1 Stat. 130 (1790) (codified at 4 U.S.C. § 71 (1988)), the United States, through its legislative branch, has maintained exclusive jurisdiction over the District. *See* U.S. Const. Art. I, § 8, cl. 17; *District of Columbia v. John R. Thompson Co., Inc.,* 346 U.S. 100, 104–106, 73 S.Ct. 1007, 1009–1010, 97 L.Ed. 1480 (1953). The explicit language of Art. I, § 8, cl. 17 of the Constitution bestows upon Congress the power "[t]o exercise exclusive Legislation in all Cases whatsoever, over such District ... as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States...."

Port Authority of New York and New Jersey. 1921 N.J.Laws, c. 151; 1921 N.Y.Laws, c. 154; see N.J.Stat.Ann. § 32:1–1 *et seq.* (West 1963); N.Y. Uncon-sol.Laws § 6401 *et seq.* (McKinney 1979). In accord with the Constitution's compact clause, Art. I, § 10, cl. 3, Congress consented to the compact. 42 Stat. 174 (1921). Through the compact, the two states created the Port Authority to achieve "a better co-ordination of the terminal, transportation and other facilities of commerce in, about and through the port of New York." N.J.Stat.Ann. § 32:1–1 (1963); N.Y. Uncon-sol.Laws § 6401 (McKinney 1979), and lodged in the Authority "full power and authority to purchase, construct, lease and/or operate any terminal or transportation facility within [the port] district." N.J.Stat.Ann. § 32:1–7 (1963); N.Y. Uncon-sol.Laws § 6407 (McKinney 1979). *See generally United States Trust Co. v. New Jersey,* 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). When deciding whether the Port Authority shared Eleventh Amendment immunity, the New York courts, *ab initio,* recognized that the States had established the Authority as a state agency under the supervision of its constituent jurisdictions. *See Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990); *Port Authority Police Benevolent Ass'n v. Port Authority of New York & New Jersey,* 819 F.2d 413 (3d Cir.), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). Although the WMATA Compact differs from the interjurisdictional agreement entered into by New York and New Jersey in many respects, including the unique status of the District of Columbia, it nevertheless illustrates that agencies created by interjurisdictional compacts which are approved by Congress are not necessarily federal agencies, and that such agencies can be, and often are, agencies of each of the signatory parties. Accordingly, we hold that for the purposes of a prosecution under the District of Columbia's bribery statute, WMATA is a District of Columbia agency.

**5.** The District of Columbia Self–Government and Governmental Reorganization Act, 87 Stat.

## II.

■ Appellant's second contention challenges the trial court's assertion of jurisdiction. Focusing on "the federal impact of WMATA and its mission," he argues that jurisdiction properly rests in the federal district court. In particular, he relies upon the following provision:

> [T]he United States district courts shall have original jurisdiction, concurrent with the courts of Maryland and Virginia, of all actions brought by or against the Washington Metropolitan Transit Authority and to enforce subpoenas issued pursuant to the provisions of Title III. Any such action initiated in a state court shall be removable to the appropriate United States district court in the manner provided by § 1446 of Title 28, United States Code.

D.C.Code § 1–2439 (1987 Repl.). Directing our attention to the fact that this provision was enacted on November 6, 1966, before the Home Rule Act[5] of 1973, appellant maintains that "the reference to 'any action initiated in state court' should not be confused to include the Superior Court of the District of Columbia with the courts of Maryland and Virginia," since WMATA was created before the recent home rule legislation came into existence in 1973. Conspicuously absent from appellant's analysis is consideration of the fact that this court has interpreted the statute to empower the Superior Court to hear civil actions in which WMATA is a party. *See Qasim v. WMATA, supra,* 455 A.2d at 907.

■ Furthermore, appellant's position fails to take into account the fact that the instant case did not arise from an action brought by or against WMATA, and is thus not within the ambit of D.C.Code § 1–2439. Rather, this is a criminal proceeding brought by the United States and, as such, implicates a completely different set of statutory provisions. Prior to the enactment of the D.C. Court Reform Act of

777, Pub.L. 93–198, December 24, 1973 (codified at D.C.Code §§ 1–201 *et seq.* (1987 Repl.)).

1970,[6] which established an independent state-type court system in this jurisdiction, the United States District Court for the District of Columbia and the District of Columbia Court of General Sessions, the predecessor of our current Superior Court, shared original jurisdiction over criminal offenses committed in the District of Columbia. *Palmore v. United States,* 411 U.S. 389, 392 n. 2, 93 S.Ct. 1670, 1673 n. 2, 36 L.Ed.2d 342 (1973); *Thompson v. United States,* 179 U.S.App.D.C. 76, 79, 548 F.2d 1031, 1034 (1976). "In an attempt to relieve the Art. III courts in this jurisdiction of the burden of having to hear purely local matters, and thus to address its attention to concerns more national in scope, Congress enacted the Court Reform Act, which provided for the establishment, *inter alia,* of the Superior Court of the District of Columbia." *McEachin v. United States,* 432 A.2d 1212, 1215 (D.C.1981) (citing *Palmore v. United States, supra,* 411 U.S. at 408–409, 93 S.Ct. at 1681–1682); *Andrade v. Jackson,* 401 A.2d 990, 992 (D.C.1979); *Thompson v. United States, supra,* 548 F.2d at 1034). The Superior Court was subsequently granted, and now enjoys, original jurisdiction over "any criminal case under any law applicable exclusively to the District of Columbia." D.C.Code § 11–923(b)(1) (1989).

■ Appellant contends that the Superior Court lacks jurisdiction because the statute vesting original jurisdiction over local matters to the Superior Court, D.C.Code § 11–923 (1989 Repl.), does not apply to the instant case since the bribery law is not a law applicable exclusively to the District of Columbia. *See* D.C.Code § 11–923(b)(1) (Superior Court has plenary jurisdiction over all "criminal case[s] under any law applicable exclusively to the District of Columbia"). It is the interjurisdictional nature of WMATA when read in conjunction with the word "exclusively" that leads appellant to argue that "[w]hen the statute can be enforced in both [the] District and [other] federal courts throughout the Washington metropolitan area, or in the District, Maryland and Virginia state courts, then the statute has no exclusive application to the District of Columbia."

Appellant, however, has misread the statute as purporting to mean that the Superior Court can hear a prosecution under the D.C.Code, § 22–712(a)(2), only when a criminal case may be brought exclusively in the District of Columbia. In fact, § 11–923's explicit provision grants jurisdiction over "any criminal prosecution under any law applicable exclusively to the District of Columbia." Under appellant's interpretation, the Superior Court is precluded from asserting jurisdiction where a case may theoretically be brought in another jurisdiction. This narrow construction ignores several well-settled principles of statutory construction. The ability to prosecute a case in a federal or foreign state court does not deprive the Superior Court of its jurisdiction, for "it is clear that where the same act constitutes both a federal offense and a state offense under the police power, the state may prosecute.... The mere existence of a similar federal statute does not prevent prosecution under local law for the same offense." *Davis v. United States,* 385 A.2d 757, 759 (D.C.1978) (per curiam) (citations omitted); *see McEachin, supra,* 432 A.2d 1212; *United States v. Jones,* 174 U.S.App.D.C. 34, 37, 527 F.2d 817, 820 (1975) (actions which constitute violations of both federal and local law may be prosecuted "in the absence of a specific federal statute superseding prosecution on the local offense....").

■ Moreover, it is unquestioned that the Council of the District of Columbia enjoys broad authority to classify an act as a crime. *See* D.C.Code § 1–227 (1987 Repl.). The fact that other jurisdictions may have similarly worded or intended laws is irrelevant to the meaning of "exclusive." We therefore reject appellant's jurisdictional contentions.

### III.

As an ancillary claim, appellant perceives error because the indictment described him

---

6. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, 84 Stat. 475, July 29, 1970 (codified at D.C.Code §§ 11–101 *et seq.* (1989)).

as "a public servant authorized to act for or on behalf of the District of Columbia." He asserts that the evidence at trial never demonstrated authority on his part to act for the District of Columbia, and that the evidence failed to reveal a "fraud" or other wrong against the District of Columbia.

D.C.Code § 22–711(6) defines "public servant" under the District of Columbia bribery statute as "an officer, employee, or other person authorized to act for or on behalf of the District of Columbia government...." Appellant concedes that he was an employee of WMATA. What he presumably finds wanting is the fact that the trial judge took judicial notice of WMATA's status as a District agency and instructed the jury accordingly: "[T]he Washington Metropolitan Area Transit Authority is a government agency of the District of Columbia, Maryland and Virginia.... The WMATA employees are considered employees of the District of Columbia, Virginia and Maryland."

■■■ This court, in appraising a claim of evidentiary insufficiency, must view all of the evidence in the light most favorable to the government, with due regard for the jury's right to weigh the evidence, to determine the credibility of witnesses, and to draw reasonable inferences. *Irick v. United States,* 565 A.2d 26, 30 (D.C.1989); *United States v. Hubbard,* 429 A.2d 1334, 1337–38 (D.C.), *cert. denied,* 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981); *Byrd v. United States,* 388 A.2d 1225, 1229 (D.C. 1978). When the defendant presents evidence on his own behalf, this court considers the entire record, and not merely the evidence presented by the prosecution, in determining the sufficiency of the proof. *In re A.B.H.,* 343 A.2d 573, 575 (D.C.1975). "It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction." *Frendak v. United States,* 408 A.2d 364, 371 (D.C.1979). When viewed through this lens, appellant's argument fails.

■■■ Appellant repeatedly conceded his employment with WMATA, and the trial court held ·as a matter of law that WMATA is an agency of, *inter alia,* the District of Columbia. Given the undisputed evidence of his employment with WMATA supported by the instructions from the court, the jury properly found that appellant was a public servant,[7] who was authorized to represent the District within the scope of his duties.

■■■ Appellant's argument regarding the government's failure to prove fraud fails to take into account the disjunctive tenor of the bribery statute.

D.C.Code § 22–712 provides:

(a) A person commits the offense of bribery if that person:

(2) Corruptly solicits, demands, accepts, or agrees to accept anything of value, directly or indirectly, as a public servant; in return for an agreement or understanding that an official act of the public servant will be influenced thereby *or* that the public servant will violate an official duty, *or* that the public servant will commit, aid in committing, or will collude in or allow any fraud against the District of Columbia. (Emphasis supplied.)

A plain reading of the statute[8] indicates that the government need prove only one mode of violation of the proscribed offense. It is well established that when the statute sets forth various modes of committing the offense in the disjunctive, and the indictment lists them conjunctively, the government need only prove one mode of violation of the statute. *United States v. Miqueli,*

---

**7.** A jury is presumed to follow the trial judge's instructions, absent record evidence to the contrary, and we find none. *Thompson v. United States,* 546 A.2d 414, 425 (D.C.1988); *Hairston v. United States,* 497 A.2d 1097, 1102 (D.C.1985).

**8.** The statute is clear and unambiguous and is to be interpreted according to its terms. *McDonald v. United States,* 496 A.2d 274, 276 (D.C.

1985) (statutory interpretation begins with the language of the act); *Finance America Corp. v. Moyler,* 494 A.2d 926, 929 (D.C.1985) (plain meaning of statute is binding); *In re Estate of Shutack,* 469 A.2d 427, 429 (D.C.1983) (if plain language of statute is clear, it must be enforced accordingly).

349 A.2d 472, 475 (D.C.1975); *District of Columbia v. Hunt,* 82 U.S.App.D.C. 159, 164, 163 F.2d 833, 837–38 (1947). Appellant does not otherwise question the sufficiency of the evidence regarding whether he accepted or agreed to accept anything of value in return for an understanding that an official act would be influenced thereby. The government's alleged failure to prove fraud on an alternative theory does not demonstrate error.

*Affirmed.*

## In re J.M.