**Dennis JACKSON, Appellant,**

*v.*

**UNITED STATES, Appellee.**

No. 79–1095.

District of Columbia Court of Appeals.

Submitted Aug. 6, 1980.

Decided Feb. 11, 1982.

Frederic R. Kellogg, Washington, D. C., appointed by this court, was on the brief for appellant. Robert E. McMillen, Washington, D. C., entered an appearance for appellant.

Charles F. C. Ruff, U. S. Atty., John A. Terry, Paul L. Knight, and Christopher A. Myers, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before HARRIS,* Associate Judge, YEAGLEY, Associate Judge, Retired, and GALLAGHER,** Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

In a seven count indictment, appellant was charged with two counts of assault on a correctional officer with a dangerous weapon (D.C.Code 1973, § 22–505(b)), two counts, of assault with a dangerous weapon (D.C.Code 1973, § 22–502), two counts of assault on a correctional officer (D.C.Code 1973, § 22–505(a)), and possession of a prohibited weapon (D.C.Code 1973, § 22–3214(b)). The indictment charged that appellant and another inmate at the District of Columbia Jail attacked two members of the correctional force with a steel bar. Appellant pleaded guilty to the charge of assault on a correctional officer, was sentenced under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1976), and the remaining counts of the indictment ultimately were dismissed. Six years later appellant filed motions to set aside his conviction, claiming that the Superior Court had no jurisdiction to entertain prosecution of assault on D. C. correctional officers pursuant to D.C.Code 1973, § 22–505(a). The trial court denied appellant's consolidated motions for postconviction relief, ruling that the Superior Court has jurisdiction over the offense in question. We affirm the judgment of the trial court.

* Judge Harris did not participate in the disposition of this case.

** Judge Gallagher was an Associate Judge of the court at the time of submission. His status changed to Associate Judge, Retired, on February 27, 1981.

■ D.C.Code 1973, § 11–923(b)(1) states that "the Superior Court has jurisdiction of any criminal case under any law applicable exclusively to the District of Columbia." D.C.Code 1973, § 22–505(a) prohibits assaults on

any officer or member of any police force operating in the District of Columbia, or any officer or member of any fire department operation in the District of Columbia; or any officer or employee of any penal or correctional institution of the District of Columbia or any officer or employee of the government of the District of Columbia charged with the supervision of Juveniles being confined pursuant to law in any facility of the District of Columbia, whether such institution or facility is located within the District of Columbia or elsewhere, while engaged in or on account of the performance of his official duties . . . .

Appellant asserts that the statute defines offenses against correctional officers in extraterritorial language and thus removes all crimes committed against correctional officers from the Superior Court's jurisdiction. We reject such an interpretation of the statutory language, and find that under the facts of this case the Superior Court properly exercised jurisdiction.

In 1970, Congress enacted the District of Columbia Court Reform and Criminal Procedure Act.[1] This statute reorganized the court system in the District of Columbia, redefining the jurisdiction of both the United States District Court and the District of Columbia Court of General Sessions, now the Superior Court. Congress thereby "created a wholly separate court system designed primarily to concern itself with local law and to serve as a local court system for a large metropolitan area . . . with responsibility for trying and deciding those distinctively local controversies that arise un-

1. District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91–358, 84 Stat. 473. D.C.Code 1973, § 11–101 et seq.

der local law, including local criminal laws having little, if any, impact beyond the local jurisdiction." *Palmore v. United States*, 411 U.S. 389, 408–409, 93 S.Ct. 1670, 1681–1682, 36 L.Ed.2d 342 (1973).

In *Thompson v. United States*, 179 U.S. App.D.C. 76, 78–79, 548 F.2d 1031, 1033–34 (1976), the Circuit Court described the changes in jurisdiction between the two court systems as follows:

Prior to the enactment of the District of Columbia Court Reform and Criminal Procedure Act of 1970, original jurisdiction over all felony cases resided in the United States District Court for the District of Columbia. On the other hand, the District of Columbia Court of General Sessions—the predecessor of the Superior Court—tried misdemeanor cases based on federal law, as did the District Court. Appeals from the Court of General Sessions went to the District of Columbia Court of Appeals, which this court was empowered to review. These jurisdictional anomalies, as well as substantial grants of concurrent jurisdiction, produced "delays in the disposition of criminal matter ... in derogation of the public and federal interest."

The Court Reform Act attempted to eliminate these oddities by assimilating the jurisdiction of the District Court and this Court to that of their federal counterparts elsewhere, and by endowing the Superior Court and the District of Columbia Court of Appeals with powers similar to those of state courts. The Superior Court now has exclusive original jurisdiction over all local criminal matters, and no jurisdiction to try those charged with offenses defined in the United States Code. [Footnotes omitted.]

As to D.C.Code 1973, § 11–923(b)(1), relied on here by appellant, that court said:

This provision, whether or not it divests the Superior Court of jurisdiction of District of Columbia Code offenses that have extraterritorial effect ... most certainly is intended to divest that Court of jurisdiction to hear criminal cases involving United States Code offenses. [*Id.* at 82 n. 22.]

In *Rivers v. United States*, D.C.App., 334 A.2d 179, 181 (1975), the criminal statute in question provided that:

Any person committed to a penal institution of the District of Columbia who escapes or attempts to escape therefrom ... shall be guilty of an offense and .... [D.C.Code 1973, § 22–2601.]

Appellant contended that the statute could be read to encompass escapes from the District's Lorton Reformatory in Lorton, Virginia. This court held that "[s]uch a construction would be contrary to the provision's legislative history and would lead to an absurd result. It thus must be rejected." *Rivers v. United States, supra*, at 180 (citations omitted). We adopt the same reasoning here. In that case, the court pointed out that Congress intended the Superior Court to have jurisdiction over all local criminal offenses. *Id.* at 181. It also observed:

If we were to adopt the construction urged by appellant, then the court Congress intended to try all local criminal offenses could not try prisoners accused of escaping within the District of Columbia from District of Columbia penal institutions and employees. *Id.* at 181.

The Circuit Court has said of the Court Reform Act that the Congress attempted to pattern the jurisdiction of the United States courts in the District of Columbia after their federal counterparts and to endow the Superior Court and the District of Columbia Court of Appeals with authority and jurisdiction similar to state courts. It added that "[t]he Superior Court now has exclusive original jurisdiction over all local criminal matters ...." *Thompson v. United States, supra*, 179 U.S.App.D.C. at 79, 548 F.2d at 1033.

Senate Report No. 91–405, 91st Cong., 1st Sess. 5 (1969) stated that " ... this transfer will bring the jurisdiction of the U. S. Courts of the District of Columbia in line with the jurisdiction exercised by the Federal courts in the several states, and will give the local courts jurisdiction over all purely local matters." *See also Palmore v.*

*United States,* 411 U.S. 389, 392 n. 2, 93 S.Ct. 1670, 1673 n. 2, 36 L.Ed.2d 342 (1973).

Appellant's interpretation of the effect of § 22–505(a) would deprive the Superior Court of jurisdiction over assaults on District of Columbia correctional officers that occur within the District, and would also contravene the expressed intent of Congress to establish the Superior Court as the judicial authority responsible for matters of strictly local concern. *Palmore, supra* at 409, 93 S.Ct. at 1682. *See also Thompson v. United States, supra.*

The United States District Court for the Fourth Circuit in expressing its interpretation of this statute, stated that "[c]ertainly [§ 11–923(b)(1)] is effective to vest jurisdiction in the Superior Court to try an assault of a protected District of Columbia officer or employee when the assault is alleged to have been perpetrated within the District of Columbia." *United States v. Perez,* 488 F.2d 1057 (4th Cir. 1974).

■■■■ This court in *In re A.S.W.,* D.C. App., 391 A.2d 1385, 1387 (1978), and the Fourth Circuit in *United States v. Perez, supra,* 488 F.2d at 1059 & n. 2, raised the possibility that Art. III, § 2, cl. 3 and the Sixth Amendment of the Constitution may require that criminal offenses be prosecuted in the state or district in which they were committed. If so, the jurisdiction of the Superior Court may not extend to assaults committed outside the District. If the Superior Court were constitutionally barred from exercising jurisdiction over assaults on correctional officers outside the District, that bar would have no effect on its jurisdiction over such assaults inside the District. Congress exercises exclusive control over the District pursuant to Art. I, § 8, cl. 17 of the Constitution, and it may distribute judicial authority among the courts and magistrates and regulate judicial proceedings in the District in any way it sees fit as long as it does not contravene the Constitution. *Palmore v. United States, supra,* 411 U.S. at 397, 93 S.Ct. at 1676. Thus, in keeping with its plan under the Court Reform Act to transfer authority over purely local matters to the local courts, Congress

could give the Superior Court jurisdiction to try assaults on correctional officers within the District, while the Constitution might require that assaults outside the District be tried in the state where they were committed. Whether or not the Superior Court has jurisdiction to try an assault committed on a correctional officer in a District of Columbia institution located in Virginia or Maryland, we need not decide now and we leave that question until such occurrence is the subject of charges in Superior Court. We note, however, that if the "or elsewhere" provision of D.C.Code 1973, § 22–505(a) is held to be unconstitutional, it need not affect the validity of the rest of the statute. *Miller v. El Paso County,* Tex.Civ. App., 146 S.W.2d 1027, 1036 (1940).

In considering the constitutionality of an act of the General Assembly of Ohio many years ago, the Supreme Court observed:

We think the case comes within *Treasurer v. Bank,* 47 Ohio St. 503, 523 [25 N.E. 697], in which the court said: "The question arises, however, whether, if that portion of the section is declared wholly or in part unconstitutional and void, it may not result in invalidating the entire section. As one section of a statute may be repugnant to the Constitution without rendering the whole act void, so, one provision of a section may be invalid by reason of its not conforming to the Constitution, while all the other provisions may be subject to no constitutional infirmity. One part may stand, while another will fall, unless the two are so connected, or dependent on each other in subject matter, meaning or purpose, that the good cannot remain without the bad. The point is, not whether the parts are contained in the same section, for, the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance— whether the provisions are so interdependent that one cannot operate without the other." [*Loeb v. Columbia Township Trustees,* 179 U.S. 472, 489, 490 [21 S.Ct. 174, 181, 45 L.Ed. 280] (1900), *quoted with approval in Berea College v. Kentucky,* 211 U.S. 45, 55 [29 S.Ct. 33, 34, 53 L.Ed. 81 (1908).]

Therefore, notwithstanding dictum in prior cases concerning the alleged extraterritorial effect of the wording of § 22–505(a),[2] we find that the enforcement of a District of Columbia statute protecting District of Columbia penal institution employees or officers from assaults which occur inside the District of Columbia is a matter to be determined by the local court system. While there may be an extraterritorial reach to the provisions concerning correctional officers in a different case, it is difficult to imagine a more "localized" offense than the one before us, in which the activity occurred in and involved employees of the District of Columbia. *See United States v. Thompson*, D.C.App., 347 A.2d 581, 583–84 (1975); *Rivers v. United States, supra* at 181. *See Mundine v. United States*, D.C. App., 431 A.2d 16, 18 (1981).

 We conclude that § 11–923(b)(1) vests jurisdiction in the Superior Court to try assaults on correctional officers charged under § 22–505(a) when the assault was committed within the geographical boundaries of this city.

*Affirmed.*

District of Columbia Court of Appeals.

---

**2.** *In re A.S.W., supra* at 1390–91; *United States v. Thompson, supra* at 584; *Rivers v. United States, supra* at 182 n. 7. As this court noted in *A.S.W.*, at 1390, the language of § 11–923(b)(1) suggests a geographical limitation to the jurisdiction of the Criminal Division. Clearly, in that case, the court's juvenile jurisdiction over an assault in Laurel, Md. did not stem from § 11–923(b)(1), but rather from those sections of the D.C.Code which grant the Family Division exclusive jurisdiction over "delinquent" children. *See* D.C.Code 1973, §§ 11–1101, –1101(13), 16–2301(6), –2301(7).